EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION and Margaret
Hasselman, Plaintiffs,

v.

SAGE REALTY CORPORATION, Monahan Commercial Cleaners, Inc., and Monahan Building Maintenance, Inc., Defendants.

No. 78 Civ. 4607 (RJW).

United States District Court,
S. D. New York.

Aug. 26, 1981.

Office of the General Counsel, Philadelphia, Pa., of counsel, for plaintiff EEOC.

Merrick T. Rossein, Deborah Bachrach, Eugene Martin-Leff, National Employment Law Project, Inc., New York City, of counsel, for plaintiff Margaret Hasselman.

Dublirer, Haydon, Straci & Victor, New York City, for defendant Sage Realty Corp.; Harold Dublirer, New York City, of counsel.

Theodore M. Wolkof, New York City, for defendant Monahan Building Maintenance, Inc.

## OPINION

ROBERT J. WARD, District Judge.

In an opinion filed January 29, 1981, following an eleven-day trial, the Court awarded Margaret Hasselman the sum of $33,141.75 in back pay and interest as compensation for defendants' wrongfully discharging her in violation of Title VII of the Civil Rights Act of 1964 ("the Act"), as amended, 42 U.S.C. §§ 2000e–2000e–17. The Court held that defendants discriminated against Hasselman on the basis of sex when they required her to wear a sexually revealing outfit known as the Bicentennial uniform during her employment as a lobby attendant in a large midtown Manhattan office building. In its earlier opinion, which is published at 507 F.Supp. 599, the Court also determined to award Hasselman reasonable attorneys' fees pursuant to section 706(k) of the Act, 42 U.S.C. § 2000e–5(k), and awarded costs to both Hasselman and plaintiff Equal Employment Opportunity Commission ("EEOC"). 507 F.Supp. at 613. Hasselman's application for attorneys' fees and costs and the EEOC's application for costs are now before the Court. An evidentiary hearing has been held. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 468 (2d Cir. 1974).

The EEOC may recover costs pursuant to Rule 54(d), Fed.R.Civ.P. *See Rios v. Steamfitters Local 638*, 400 F.Supp. 993, 998 (S.D.N.Y.1975), *aff'd*, 542 F.2d 579 (2d Cir. 1976), *cert. denied*, 430 U.S. 911, 97 S.Ct.

Leroy T. Jenkins, Jr., Lanier E. Williams, David Ingram, Equal Employment Opportunity Commission, Philadelphia Regional

1186, 51 L.Ed.2d 588 (1977). Inasmuch as the costs sought by the EEOC are reasonable and were necessarily incurred in the prosecution of this litigation, they are properly recovered from defendants.

Plaintiff Hasselman seeks to recover for attorneys' fees valued by her at $100,788.75. She also requests that this "lodestar" figure of $100,788.75—obtained by multiplying the number of hours by an hourly rate for each lawyer, paraprofessional or law student involved—be adjusted upward by a multiplier of two, for a total fee award of $201,557.50. In addition, Hasselman seeks to recover costs in the amount of $534.00.

Although Hasselman actually has not been billed $100,778.75, this lodestar figure represents the amount she claims she would have been billed had her private counsel charged her the full amount appropriate for the services rendered. The $100,778.75 total derives from 1243.50 hours of work by lawyers ($94,697.50 for 1000.25 hours) and by paraprofessionals and law students ($6081.25 for 243.25 hours). From June 1976 through November 1978, Hasselman was represented by the Queens Legal Services Corporation ("QLS"). Since November 1978, she has been represented by the National Employment Law Project ("Project"), a not-for-profit corporation that provides specialized legal services in employment law.

■ For the reasons that follow, the Court awards plaintiff Hasselman attorneys' fees in the total amount of $90,365.00, plus costs of $534.00. The breakdown of this award is summarized in the Appendix to this opinion, Table 1. It is based on a lodestar figure of $69,585.00 and includes a bonus of 35 per cent of the lodestar. Of the total award, $2,683 is for services provided to Hasselman by QLS during the early stages of the litigation, and the balance is for the Project's representation of plaintiff Hasselman.

### Methodology and Criteria

■ The standard to be applied in the Second Circuit to determine an appropriate award for attorneys' fees is set forth in *City of Detroit v. Grinnell Corp., supra*, 495 F.2d at 470–74. Under the *Grinnell* standard, the Court is to evaluate the number of hours spent by counsel and to ascertain a reasonable rate for counsel's time. In addition, the Court must assess the risks of litigation and the novelty, complexity and importance of the issues litigated, to determine if the lodestar figure of reasonable rate multiplied by the time allowed should be increased by a bonus or contingency multiplier. *Id.* at 471–472. *See also Ste. Marie v. Eastern Railroad Association*, 497 F.Supp. 800, 812–13 (S.D.N.Y.1980), *rev'd and remanded on other grounds*, 650 F.2d 395 (2d Cir. 1981). Although in this circuit the court of appeals has yet to specify criteria to be considered in determining an appropriate fee award, at the suggestion of the parties the Court has considered the Fifth Circuit's criteria, *see Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974); *accord, Anthony v. Marion County General Hospital*, 617 F.2d 1164, 1171 (5th Cir. 1980), and the factors listed in the ABA Code of Professional Responsibility, D.R. 2–106(B).

■ Defendants argue that an attorneys' fee award in this case should be limited to a percentage of the amount recovered by plaintiff Hasselman. They suggest that Hasselman be awarded no more than the customary contingent fee in New York of one-third of the amount recovered, or in this case about $11,000. Defendants' argument is without merit. It is by now well settled that, although the size of the recovery is a factor that may be considered by the Court, an award of attorneys' fees is not to be based on the amount recovered. *See City of Detroit v. Grinnell Corp., supra*, 495 F.2d at 468–74.

■ Similarly without merit is defendants' further argument that any amount of attorneys' fees that would otherwise be awarded here must be reduced because the Project receives substantial governmental funding. This very contention was rejected by the court of appeals in *EEOC v. Steamfitters Local 638*, 542 F.2d 579, 592–93 (2d

Cir. 1976), *cert. denied*, 430 U.S. 911, 97 S.Ct. 1186, 51 L.Ed.2d 588 (1977), a case involving a fee application in which the plaintiffs were represented by the Project. The court in *Steamfitters* held only that the factor of public funding *may* be considered in a district court's determination of an attorneys' fee award, and that it was not an abuse of discretion for the lower court to award less to the Project than it would have awarded to a non-federally funded law firm. *Id.* at 593. In this Court's view, plaintiff Hasselman should recover an award of attorneys' fees on the same basis as if she had been represented by private counsel.

█ The Court also finds that Hasselman's attorneys' fee award should not be limited to the salaries paid to lawyers employed by the Project, even after an adjustment for overhead, non-salary benefits and the like. *See Allen v. Terminal Transport Co.*, 486 F.Supp. 1195, 1199 (N.D.Ga.1980), *aff'd mem. sub nom. Beasley v. Terminal Transport Co.*, 638 F.2d 1232 (5th Cir. 1981). Salaries might well be relevant to a determination of appropriate hourly rates. But, as is nearly always the case, lawyers employed by public interest law firms earn less, often considerably less, than lawyers engaged in private practice. Just as a defendant found liable for attorneys' fees should not be required to pay an award based on rates charged by the most expensive private law firm in the community (if, for example, such a firm took on a Title VII action on a *"pro bono publico*—statutory fee" basis), an unsuccessful defendant should not benefit from the fortuitous happenstance that the successful plaintiff was represented by a public interest lawyer. *See generally* Berger, *Court Awarded Attorneys' Fees: What is "Reasonable"?*, 126 U.Pa.L.Rev. 281, 323 (1977).

█ As a general proposition, attorneys' fees should be awarded at hourly rates based on the average rate charged by lawyers in the community with similar experience and of comparable quality to those by whom the successful Title VII plaintiff was represented. Experience includes not only the number of years of practice but also the nature of the practice engaged in. Similarly, the Court's assessment of allowable time must be based on an evaluation of the time reasonably necessary to perform the tasks required, given counsel's experience at the bar. Inefficiency cannot be rewarded, and an experienced lawyer who is properly allowed a greater hourly rate should perform more efficiently than a less experienced attorney whose time must be valued at a lower rate.

█ A prevailing plaintiff should not be denied an award of attorneys' fees because, as here, she did not herself initiate the action but rather exercised her statutory right pursuant to 42 U.S.C. § 2000e–5(f)(1) to intervene in an action commenced by the EEOC. *See EEOC v. Murphy Motor Freight Lines, Inc.*, 488 F.Supp. 381, 389 (D.Minn.1980). As intervening plaintiff, Hasselman was entitled to full representation by the counsel of her choice. She was not required to stand to the side and let her hopes ride on the EEOC's performance. Although in an action brought on behalf of an individual the EEOC will generally be acting in the interests of the individual intervenor, the interests of the EEOC and the intervening plaintiff will not always be the same. Moreover, the EEOC and the private plaintiff should be free to decide which of them will undertake primary responsibility for the case, and if successful the private plaintiff should not be denied reasonable attorneys' fees because certain aspects of the litigation handled by her counsel could have been handled by the EEOC.

█ Nevertheless, in an action such as this, where the EEOC is a participant, the private plaintiff's attorneys must make every reasonable effort to ensure that they do not unnecessarily duplicate work done by the government plaintiff. Just as any private lawyer whose client is footing the bill would do, an attorney representing an intervening Title VII plaintiff should take appropriate advantage of the work effects of the EEOC counsel. Thus, where the Court has found that Hasselman's attorneys failed to avail themselves of EEOC assist-

ance and unnecessarily duplicated work performed by government counsel, it has reduced the fee award accordingly.

### Rates

To compute the amount of the fee award the Court first determines an appropriate rate for each of the three lawyers who represented plaintiff Hasselman in this case. The Court has assigned an hourly rate to each attorney for each of the calendar years during which this litigation was conducted. Hourly rates are developed for the Project's paraprofessionals and law students as well, whose time may also be considered as part of allowable attorneys' fees.

In the Court's view, Hasselman received legal representation of a quality well above average for the community. Accordingly, Hasselman's counsel are entitled to value their time at a rate in excess of the prevailing average. Unfortunately for defendants, the legal community from which plaintiff Hasselman's representation was drawn, New York City, is one of the most expensive in the country. However, although Hasselman's counsel argued to the contrary, the Court does not believe that Project lawyers are entitled to value their time at the rates at which the most expensive law firms bill their lawyers' time. While the Court does not dispute that the quality of the Project's work may be as good as that done at New York's most expensive law firms, the Court also knows that there are lawyers of equally high quality who, because of the nature of the practices and the type of clients they serve, bill at considerably lower rates than the city's costliest firms.

Three Project lawyers worked on Hasselman's case. Merrick T. Rossein, a 1975 law school graduate, first represented Hasselman in 1976 when she became a client of QLS. When Rossein moved to the Project in November 1978 he brought the Hasselman case with him from QLS. At the Project, Deborah Bachrach, a 1974 law school graduate, joined Rossein as Hasselman's counsel. Bachrach and Rossein spent approximately equal amounts of time on the case. In addition, Eugene Martin-Leff, a senior Project attorney and a 1970 law school graduate, assisted Bachrach and Rossein briefly on a few occasions during the course of this litigation and appeared as counsel for plaintiff Hasselman at the hearing on attorneys' fees.

The fee application seeks an award based on the same hourly rates for Bachrach and Rossein. The Court finds this to be inappropriate. Bachrach was admitted to the bar a full year before Rossein and has substantially more experience than he, especially at trial work. She is a first-rate lawyer, who the Court believes has a bright future ahead of her. The Court finds that the appropriate hourly rates on which to base the attorney's fee for Bachrach's time are $70 for 1979, $90 for 1980, and $100 for 1981. Rossein's performance, though solid, was somewhat less impressive than Bachrach's. For his time, the attorney's fee is based on hourly rates of $30 for 1976, $40 for 1977, $50 for 1978, $60 for 1979, $70 for 1980 and $85 for 1981.

Hourly rates of $100, $110 and $125 are sought for Martin-Leff's time for 1979, 1980 and 1981. Although the Court recognizes that such rates are well in line with those charged by private lawyers with Martin-Leff's experience, the Court cannot allow a $125 hourly rate for the services performed by him in 1981. During 1981 Martin-Leff's time was spent preparing the fee application and participating in the hearing on that application. Though he performed ably, the work could easily have been done by an attorney whose time would have been charged at a lower rate. Therefore, for Martin-Leff's time the award is based on hourly rates of $100 for 1979 and $110 for 1980 and 1981.

The Court finds that the hourly rate in the fee application of $25 for paraprofessionals and law students, for 1979, 1980 and 1981, is fair and reasonable. Currently, as the Court understands it, private law firms in this community typically bill their clients for the services of paralegals and law students at twice this rate or more.

### Time

Turning to the question of allowable time, the Court commends the Project's lawyers on the thoroughness and the level of detail with which they presented the instant fee application. This made the always difficult task of evaluating the time spent by counsel, paralegals, and law students on the various aspects of the litigation considerably easier than it would otherwise have been.

#### A. Attorneys' Time

■ The fee application distributes the time spent by Project lawyers into seven categories, which for the purposes of its review the Court has collapsed into the following six categories: (1) administrative process, (2) discovery, (3) conferences, (4) research and briefing, (5) pre-trial court appearances, and (6) trial. The Court's determination of the time it will allow for each of these categories is discussed in the following paragraphs.

1. *Administrative Process.* It is now settled that attorneys' fees may be awarded to a prevailing Title VII plaintiff for work done in administrative proceedings preceding the filing of a Title VII action. *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980). All of the time attributable to the administrative process in this action is for services rendered by Rossein, nearly all of it while he was at QLS. Rossein avers that he spent a total of 51.5 hours on the administrative aspects of this case during the years 1976 to 1978. The Court finds this to be a reasonable time expenditure and has allowed all of the hours requested.

■ Defendants maintain that Hasselman should be precluded from recovering attorneys' fees for any of the 51 hours Rossein spent on this case while at QLS because he did not keep contemporaneous time records when he was in his former position. Although the Court recognizes the importance of supporting attorneys' fee applications with contemporaneous time records, the absence of such records should not be an automatic bar to a fee recovery.

In this instance Rossein reconstructed his time by reviewing contemporaneous notes taken on his activities and estimating the time spent. For example, Rossein assigned an average time of 15 minutes to each substantial telephone conversation. The Court will accept this approach in this case and will allow the full 51 hours claimed for work done by Rossein while at QLS.

■ 2. *Discovery.* Plaintiff Hasselman requests attorneys' fees for a total of 112.75 hours spent by counsel in pretrial discovery during 1978, 1979 and 1980. Of this total, 44 hours are claimed for Bachrach's efforts and 68.25 hours for Rossein's time; 95.25 of the 112.75 hours of discovery were spent in 1979. In the Court's view, this is a reasonable amount of time for counsel to have spent on discovery. It represents a mere three attorney-weeks of time. Accordingly, with the exception of the three-quarters of an hour it took Rossein to draft a notice of deposition on May 18, 1979, which the Court has reduced to one-quarter hour, all of the time sought for discovery, or a total of 112.25 hours, is allowed.

■ 3. *Conferences.* Counsel spent 30 hours in conference with each other, with EEOC attorneys, and with plaintiff Hasselman over the course of the litigation. Rossein and EEOC counsel conferred for a total of 13.75 hours in 1978 and 1979; Bachrach participated with Rossein in conference with EEOC attorneys for 8.75 of these hours. The Court finds that the time spent in conference by Hasselman's attorneys is reasonable. Obviously, it is essential that counsel confer with their client. Moreover, for the private plaintiff's lawyers to minimize the amount of time expended in duplication of EEOC work, some time had to be spent meeting with the EEOC lawyers to coordinate efforts. All of the 30 hours requested are allowed.

4. *Research and Briefing.* The fee request for time spent by counsel in research and briefing activities is based on the following breakdown:

| | No. of Hours |
|---|---|
| General background research, 1978–79 | 17.25 |
| Motion to amend complaint, 1979 | 14.25 |
| Opposing defendants' motion for summary judgment, 1979 | 150.25 |
| Attorneys' fees application, 1980–81 | 73.00 |
| Total | 254.75 |

The Court finds the 17.25 hours spent by counsel on background research to be a reasonable amount of time to put into preparing to commence a Title VII action and will permit Hasselman to recover attorneys' fees based on all of this time. With respect to time spent by Hasselman's counsel in preparing the motion to amend her complaint, the Court finds that the seven hours spent by Bachrach researching the law on such a motion is excessive. In the Court's view, no more than four hours of research was necessary to master the well-settled law in this area. *See, e. g., Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Hasselman may recover attorneys' fees for 11.25 hours of 14.-25 hours spent by counsel preparing the papers submitted in support of her motion to amend.

The Court does not find that the 150.25 hours spent by Hasselman's attorneys opposing defendants' motion for summary judgment is excessive. To prepare the high-quality memoranda of law that the Project lawyers submitted could easily consume the time counsel spent. Counsel were arguing unprecedented questions of law on conceptually difficult issues. High-quality legal services take time and can be expensive.

Nevertheless, while the Court recognizes that Project counsel had a professional responsibility to represent their client fully on their own, and should not have been expected to rely on the EEOC's submissions to argue points that they believed should be presented to the Court, Hasselman's counsel should have shared research efforts with EEOC counsel and jointly prepared with the EEOC's attorneys at least the draft of any statement of facts and preliminary statements included in the papers filed in opposition to the motion for summary judg-

ment. Because there is no evidence that Project counsel coordinated with the EEOC's lawyers in this way, the Court has determined to award attorneys' fees for time spent opposing the motion for summary judgment on the basis of 18.25 hours of research time for Rossein, rather than the 27.25 hours sought, and 20 hours of research time for Bachrach, rather than the 29.5 hours sought for her. In addition, the Court will only allow 44.25 hours for time spent by Rossein writing his part of Hasselman's memorandum in opposition to the summary judgment motion, as opposed to the 48.25 hours requested, because he prepared the preliminary statement and the statement of facts. The Court will allow all of the 44.25 hours it took Bachrach to prepare her part of the papers filed by Project counsel on the summary judgment motion, as well as the one hour spent by Martin-Leff reviewing the memorandum of law. This brings the total time allowed in connection with defendants' motion for summary judgment to 127.75 hours.

Finally, the Court has determined to award attorneys' fees for all of the 73.00 hours spent by Project counsel preparing the fee application. Attorneys' fees may be awarded for time spent on the fee application. *Gagne v. Maher,* 594 F.2d 336, 343–44 (2d Cir. 1978), *aff'd,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980). As already noted, counsel's submission was thorough and detailed, and presented in a well-organized manner. Counsel did a fine job on the memoranda of law submitted in support of the application, which the Court found quite helpful. Given the quality of their product, the time spent by Hasselman's counsel is reasonable.

5. *Pre-trial Court Appearances.* Hasselman requests attorneys' fees for two pre-trial court appearances, both by Rossein, totaling three hours. Inasmuch as the Court is aware that these two appearances took place, the time is allowed.

6. *Trial.* In her fee application plaintiff Hasselman seeks attorneys' fees for 156.50 hours of attorney time for trial

proceedings in court, 332.50 hours for out-of-court preparation just before and during trial, and 59.25 hours for time spent by counsel preparing for and participating in the hearing held on the instant fee application. The Court finds this request to be excessive. Recognizing that extensive preparation was required, the Court has based its award on all of the hours requested for out-of-court preparation before and during trial. However, the Court has allowed only 80 hours for trial proceedings and 30 hours in connection with the hearing on the fee application.

Throughout the eleven days of trial in this action, there almost always were four counsel present for plaintiffs—two attorneys from the EEOC and the two Project lawyers, Bachrach and Rossein. Although the plaintiffs' case was handled almost entirely by Hasselman's counsel, the EEOC attorneys were continuously present and presumably were available to assist the Project counsel. In the Court's opinion, the Project attorneys failed to make sufficient use of the assistance the EEOC attorneys could have provided. The Court recognizes the importance, in a long and difficult trial such as the one held here, of having another lawyer "second seat" for the attorney principally involved in the proceedings. Bachrach and Rossein performed this function for each other, by alternating from principal to second-seat attorney. In the Court's view, however, one of the EEOC attorneys could have served as second-seat counsel to the Project lawyer principally involved, while the other Project attorney worked on some of the trial preparation matters that presumably were handled during recesses, in the evenings, or on weekends. Surely it was good experience for both Project attorneys to be present at all times. But, given the availability of assistance from the EEOC lawyers present, the Court believes it would be both unfair and unreasonable to make defendants pay for Project counsel's learning experiences. Accordingly, noting from the fee application that Bachrach and Rossein spent 76.5 hours together in court during trial, and recalling that the two Project attorneys spent about equal time as

principal trial lawyer, the Court has reduced the trial time requested by these 76.5 hours, by reducing the time allowed for each of them by one-half of the time they were in court together (*i. e.*, by 38.25 hours each). A total of 80 hours is allowed for court time during trial.

Turning to the time requested for the fee application hearing, *see Gagne v. Maher, supra*, 594 F.2d at 343–44, the Court finds that no more than 10 hours each should have been necessary for Rossein and Martin-Leff to prepare for the hearing, and thus will allow only 20 hours for hearing preparation. In addition, in the Court's view no attorneys' fees may be awarded for Rossein and Bachrach's time at the hearing. They participated only as witnesses. Martin-Leff served as their attorney. Accordingly, a fee may be recovered only for the ten hours he spent participating in the hearing.

**B. *Paralegals' and Law Students' Time***

Hasselman's application requests compensation for a total of 156.5 hours spent by paraprofessionals, or paralegals, and 86.75 hours for work done by law students. The Court has allowed all but 13 of the hours requested for paralegals. These 13 hours were deducted because this time was spent in meetings or interviews at which a Project attorney also was present. This represents unnecessary duplication.

Of the time expended by law students, 43.25 hours were devoted to research and writing on the fee application. Given the amount of time Project lawyers spent preparing this application, this also is excessive. The Court, however, recognizes that some of the student assistance undoubtedly reduced attorney time and, for this reason, has allowed 16 hours for the time spent by law students on the initial application and the 5.5 hours spent by them in preparing Hasselman's reply to defendant's opposition. Otherwise, the Court finds the law students' time to be reasonable and has allowed all of the 43.5 hours sought for student work during trial. The

fee award is based on 143.5 hours for paralegals and 65 hours for law students.

The Court's computation of the lodestar figure, broken down by attorney and by category of work activity, is summarized in the Appendix to this opinion, Tables 2 and 3.

### Bonus

 In appropriate cases, the lodestar figure may be increased by a bonus, or multiplier, to account for the attorneys' risk of litigation—that is, the risk that counsel will be unsuccessful and be unable to recover any fee. *City of Detroit v. Grinnell Corp., supra*, 495 F.2d at 471. Such increases are also referred to as "contingency adjustments," *see* A. Miller, Attorney's Fees in Class Actions 10 (Federal Judicial Center 1980), and are designed to reflect the likelihood of success on the merits of the claims involved. In this Court's view, a bonus should not be awarded on the basis of quality of representation or the complexity of the case. Rather, these considerations are reflected in the lodestar figure. Hourly rates are assigned to counsel, in part, on the basis of the skill of counsel and the quality of services provided, and time allowed reflects the complexity of the case. *See Population Services International v. Carey*, 476 F.Supp. 4, 12 (S.D.N.Y.1979). While the novelty and complexity of the issues presented undoubtedly have an effect on the likelihood of success, they do not themselves bear directly on the amount of a bonus award.

 The addition of a multiplier thus is designed to encourage attorneys to take cases that are less than certain winners. By increasing awards by contingency factors reflecting the risks of litigation it is hoped that, taking into account cases that are unsuccessful and result in no award, on average attorneys will be compensated at appropriate rates for time reasonably spent, no more and no less.

 Because there is no risk associated with time spent by counsel in connection with an attorneys' fee application, no bonus should be assigned to that part of the lodestar figure based on fee application activities. Only in cases in which the plaintiff or plaintiffs have been successful (at least through the district court level) will fee applications be made. Thus, since there will be no cases in which attorneys' fee applications are made that are unsuccessful, there should never be attorney time spent in connection with fee applications for which there is no compensation.

The Court finds that a bonus of 35 per cent is appropriate in this case. As far as the Court is aware, there is no other reported federal case addressing the issues that were presented here. Hasselman's counsel were sailing in uncharted waters. They were relying for success on their ability to persuade the Court that the decision it reached was the right one.

 Although it is difficult, looking back, to assess what, at the outset of the case, the likelihood was that the Court would have reached the result it did, the Court is of the view that objectively Hasselman had not better than an even chance of succeeding on the merits. The Court, however, does not believe that a contingency multiplier should be derived solely by computing the reciprocal of the probability of success (*e. g.*, by multiplying the lodestar figure by two if the chance of success was 50 per cent, or by four if it was 25 per cent). For although cases may be said to have a certain probability of ultimate success, in few cases is an ultimate decision ever reached. Most cases settle. To account for this, the Court must also assess the likelihood of settlement, as the Court has done here, and adjust the bonus multiplier accordingly.

Applying a multiplier of 35 per cent to the lodestar figure of $59,372.50 for time spent by Hasselman's counsel other than in connection with the fee application, the Court awards a bonus of $20,780.00. *See* Appendix, Table 1.

### Conclusion

The Court recognizes that the attorneys' fees it awards here are substantial. They

far exceed the $33,141.75 recovered by plaintiff Hasselman and even surpass the $58,606.72 she would have recovered had she not mitigated her lost earnings. 507 F.Supp. at 613. This is an important case, however, and one that, if the principle it embraces is followed, should go a long way toward deterring employers from intentionally or carelessly permitting their female employees to be subjected to sexual harassment on the job.

Accordingly, plaintiff Hasselman is awarded $90,365.00 in attorneys' fees and $534.00 for costs, and the EEOC's application for reimbursement of $5,629.80 in taxable costs is granted.

Settle final judgment on notice.

## APPENDIX

Table 1. Summary of Attorneys' Fees Award

| | Litigation Fees (bonus applied) | Fee Application (no bonus applied) | Total |
|---|---|---|---|
| Lawyers: | | | |
| Martin-Leff | $ 870.00 | $ 2,337.50 | $ 3,207.50 |
| Bachrach | 27,927.50 | 3,482.50 | 31,410.00 |
| Rossein | 25,900.00 | 3,855.00 | 29,755.00 |
| Paralegals | 3,587.50 | –0– | 3,587.50 |
| Law Students | 1,087.50 | 537.50 | 1,625.00 |
| | $59,372.50 | $10,212.50 | $69,585.00 |
| Bonus at 35% (.35 x $59,372.50) | | | 20,780.00 |
| | | Attorneys' Fees | 90,365.00 |
| Costs | | | 534.00 |
| | | Total Award | $90,899.00 |

Table 2. Lodestar Figure by Attorney

| | Hours Sought | Hours Allowed | Amount Awarded |
|---|---|---|---|
| Lawyers: | | | |
| Martin-Leff | 43.50 | 29.25 | $ 3,207.50 |
| Bachrach | 427.75 | 377.00 | 31,410.00 |
| Rossein | 529.00 | 462.25 | 29,755.00 |
| Lawyers' Totals | 1,000.25 | 868.50 | 64,372.50 |
| Paralegals | 156,50 | 143.50 | 3,587.50 |
| Law Students | 86.75 | 65.00 | 1,625.00 |
| Totals | 1,243.50 | 1,077.00 | $69,585.00 |

Table 3. Lodestar Figure by Category of Activity

| | Hours Sought | Hours Allowed | Amount Awarded |
|---|---|---|---|
| 1. Administrative Process | 51.50 | 51.50 | $ 2,017.50 |
| 2. Discovery | 112.75 | 112.25 | 7,245.00 |
| 3. Conferences | 30.00 | 30.00 | 1,942.50 |
| 4. Research & Briefing | 254.75 | 229.25 | 16,917.50 |
| 5. Pre-trial Court Appearances | 3.00 | 3.00 | 170.00 |

Table 3. Lodestar Figure by Category of Activity

| | Hours Sought | Hours Allowed | Amount Awarded |
|---|---|---|---|
| 6. Trial (including hearing on fee application) | 548.25 | 442.50 | 36,080.00 |
| Subtotals | 1,000.25 | 868.50 | 64,372.50 |
| Paralegals | 156.25 | 143.50 | 3,587.50 |
| Law Students | 86.75 | 65.00 | 1,625.00 |
| Totals | 1,243.50 | 1,077.00 | $69,585.00 |