ANTHONY AVENA et al., on Behalf of Themselves and All Others Similarly Situated, Respondents, v FORD MOTOR COMPANY, Appellant.

First Department, February 25, 1982

### APPEARANCES OF COUNSEL

*J. Peter Coll, Jr.,* of counsel (*Charles W. Gerdts, III* and *Mio P. Sylvester* with him on the brief; *Donovan Leisure Newton & Irvine,* attorneys), for appellant.

*Jonathan M. Plasse* of counsel (*Robert S. Schachter* with him on the brief; *Kass, Goodkind, Wechsler & Labaton,* attorneys), for respondents.

SILVERMAN, J.

These are appeals from orders of Special Term of the Supreme Court denying court approval of a proposed compromise (107 Misc 2d 444) and discontinuance of a purported class action suit by settlement of the individual claims of the named plaintiffs and discontinuance of the class action aspects of the case without prejudice to the claims of other members of the class, but without notice to them.

Although the defendant has answered, no application has been made for an order to determine whether the action is to be maintained as a class action and for certification as such under CPLR 902.

The primary issue on the appeal is whether on an application to approve such a compromise at that stage of the action the court can or should dispense with notice to the putative class. Special Term held that notice was mandatory. We agree.

The action arises from a claim that a certain percentage of Ford vehicles, 1974 through 1977 models, equipped with certain types of engines, are susceptible of developing a cracked engine block. Some six or seven months before the institution of this action, defendant Ford had instituted an extended policy program, publicly announced, notice of which was given by mail to each owner of the subject vehicles, that Ford would pay 100% of the cost of repairs of any subject vehicle developing a cracked engine block, within 36 months of ownership or 36,000 miles, due to the causes identified. This program did not cover engine block cracks due to other causes. The program had been the subject of an investigation by the Federal Trade Commission. Apparently the notice of this program stimulated the bringing of this action. Of the three named plaintiffs, one plaintiff, Anthony Avena, claimed that his engine block had cracked but that he had been denied coverage because the Ford dealer who had inspected the vehicle concluded that the engine block had cracked due to Mr. Avena's failure to maintain the vehicle properly. Another plaintiff, plaintiff Silverman, owned a car whose engine block had not cracked or had any symptoms of a cracked block, but

feared that his vehicle some day might develop a cracked engine block. The third named plaintiff had voluntarily withdrawn from participation in the action. The action is entitled in the name of the three named plaintiffs, "on Behalf of Themselves and All Others Similarly Situated," and the prayers for relief in the complaint are all for judgments in favor of "plaintiffs and the class" or "plaintiffs and the members of the class." (The prayers for relief are for damages and mandatory injunction to comply with the terms of warranties and to require Ford to remove any time and mileage limitations in the warranty and to inspect and repair the defects free of charge.)

The proposed terms of the settlement essentially were that plaintiff Avena would receive from Ford either repair of the engine block of his car or reimbursement of out-of-pocket expenses for repair; plaintiff Silverman would receive an inspection of his car to determine whether it exhibited any of the symptoms of the cracked engine block problem; Messrs. Avena and Silverman would execute general releases to Ford; Ford would pay plaintiffs' attorney $6,000 for legal services; plaintiffs would seek an order of discontinuance to dismiss with prejudice all individual claims asserted by the named plaintiffs but without prejudice to any claims of the putative members of the alleged class. The settlement further provided that as a condition of the compromise Ford required that the order of discontinuance contain no provision for notice to putative members of the alleged but uncertified class and that if the court determines that such notice is necessary, then Ford shall withdraw from the settlement agreement.

For some reason plaintiffs' attorneys did not apply for court approval of the compromise and discontinuance, but Ford did and plaintiffs' attorneys consented.

Special Term refused to approve the settlement without notice to the putative members of the class on the ground that such notice was mandatory (107 Misc 2d 444, *supra*). Defendant Ford appeals from that determination.

CPLR 908 provides: "A class action shall not be dismissed, discontinued, or compromised without the approval of the court. Notice of the proposed dismissal, dis-

continuance, or compromise shall be given to all members of the class in such manner as the court directs."

Subdivision (e) of rule 23 of the Federal Rules of Civil Procedure is substantially identical.

The first question logically is whether an action, which purports to be a class action but has not yet been certified as such by the court, shall be deemed "a class action" for the purposes of CPLR 908.

■ There is some difference in the Federal authorities as to whether it must be so considered under the Federal rules. (Cf. *Shelton v Pargo, Inc.,* 582 F2d 1298, 1303, and *Magana v Platzer Shipyard,* 74 FRD 61, indicating that it need not be, and *Philadelphia Elec. Co. v Anaconda Amer. Brass Co.,* 42 FRD 324, and *Rothman v Gould,* 52 FRD 494, indicating that it must be so considered; see, also, Developments in the Law - Class Actions, 89 Harv L Rev 1318, 1542, n 32.) In the present case the movant does not seriously dispute the applicability of CPLR 908, and we agree. The fiduciary obligations of the named plaintiffs in instituting such an action are generally recognized and not disputed. The potential for abuse by private settlement at this stage is also obvious and recognized. After all plaintiffs must decide whether to apply for class action certification, which if granted, would surely involve great expense and risk to defendant, or on the other hand, must decide not to apply for class action certification for reasons legitimate or illegitimate. And obviously the risk that plaintiffs' decision on this point may be influenced by whether the settlement is satisfactory or not gives to plaintiffs an opportunity to use "the class action claim for unfair personal aggrandizement in the settlement". (*Shelton v Pargo, Inc.,* 582 F2d, at p 1314.) For these reasons we think that CPLR 908 should apply to even a without prejudice (to the class) settlement and discontinuance of a purported class action before certification or denial of certification.

■ The question then is whether the provision of CPLR 908 that "[n]otice of the proposed dismissal, discontinuance, or compromise shall be given to all members of the class in such manner as the court directs" requires notice to be given or merely leaves to the court's discretion not

only how notice shall be given but whether. Again the Federal courts have divided on the question whether the provision for notice is mandatory or merely discretionary under the Federal rule. (See cases cited, *supra*.)

The natural reading of the statute on its face is that *some* notice *must* be given, but that the court has discretion as to what kind of notice.

As in any difficult question, there are policy considerations to support either view.

Clearly some control of settlement or discontinuance of a purported class action is necessary. The abuses which have developed incident to the beneficent widened availability of class actions and the potential for abuse in a private settlement even before certification are widely recognized. The requirement of notice to the class makes settlement more difficult, perhaps even impossible in some cases. But of course CPLR 908 intends to make settlement of class actions somewhat more difficult as part of the price of preventing abuse. And by the very act of asking for court approval, which would otherwise not be necessary, the parties recognize that such settlements are subject to greater control and thus more difficult than the settlement of a purely individual lawsuit. The question is how much more difficult shall they be. Shall court approval be sufficient with or without notice to the class, or shall notice of the proposed settlement be given somehow to the class, or should there perhaps be a hearing at which the court inquires into the fairness, desirability, lack of collusion, and adherence to fiduciary standards before deciding whether to give notice to the class?

In this connection I note that it is a basic duty of a fiduciary to disclose all relevant facts to his beneficiaries. (Cf. *Wendt v Fischer,* 243 NY 439, 443.) In that context a requirement of the settlement that notice not be given to the members of the class is particularly unpalatable. On the other hand, if the court should determine that no notice need be given to the class anyhow, perhaps the unpalatability of that as a requirement of the settlement becomes merely a matter of taste. Indeed the parties in the present case say they have no desire to conceal the facts of the

settlement from the class, they just do not desire to go to the expense of notifying the individual members of so large and amorphous a class. We may also speculate that at least the defendant is not particularly anxious to stir other as yet quiescent members of the class, and perhaps other plaintiff lawyers who specialize in class actions, into starting new litigations.

As to the present case, plaintiffs say that on further examination of the facts and answers to interrogatories they have determined that probably this is not a proper class action. And indeed, there are obvious difficulties about whether this is a proper class action, e.g., given Ford's announced extended policy program, whether "there are questions of law or fact common to the class which predominate over any questions affecting only individual members" (CPLR 901, subd a, par 2); perhaps the predominating question will be merely whether the engine block of a particular car owned by a particular member of the class is or is not defective. But this difficulty must have been apparent before the action was begun as a class action.

The terms of the particular settlement before us are not shocking:

The little bit that the individual plaintiffs are receiving may be no more than they are entitled to. But it remains true that the named plaintiffs-fiduciaries are assured of that little bit (notwithstanding some possible questions as to whether they are really entitled to it) by the settlement, while their beneficiaries, the other members of the class, are left to struggle for themselves.

The lawyers are receiving a fee of $6,000, which in absolute terms is a modest amount. And under the Magnuson-Moss Warranty Act (US Code, tit 15, § 2310, subd [d], par [2]) if a consumer prevails in an action brought under the act, the court may award attorneys' fees based on actual time expended. But again the actual time expended here seems to have been almost entirely in the determination whether this is a proper class action. (There is some question whether plaintiffs have complied with the prerequisites for bringing a class action under that act.) The question whether in the circumstances of this case plaintiffs' attorneys would be entitled under the act to these

attorneys' fees is resolved in favor of the attorneys for the plaintiffs-fiduciaries by the settlement.

These advantages to the fiduciaries and their attorneys (if indeed they are advantages) are modest enough; perhaps even only nominal. But long ago Judge CARDOZO said with respect to the argument that the beneficiaries of an alleged fiduciary's breach of obligation were not damaged: "This is no sufficient answer by a trustee forgetful of his duty. The law 'does not stop to inquire whether the contract or transaction was fair or unfair. It stops the inquiry when the relation is disclosed, and sets aside the transaction or refuses to enforce it, at the instance of the party whom the fiduciary undertook to represent, without undertaking to deal with the question of abstract justice in the particular case' (*Munson* v. *Syracuse, etc., R. R. Co.,* [103 NY 58, 74]; cf. *Dutton* v. *Willner,* 52 N. Y. 312, 319). Only by this uncompromising rigidity has the rule of undivided loyalty been maintained against disintegrating erosion." (*Wendt v Fischer,* 243 NY, at pp 443-444.)

It is suggested that instead of requiring notice, the court should hold a hearing to determine whether notice is really necessary and whether the terms of the settlement are so fair, and so free from collusion or undue advantage to the fiduciaries arising out of their fiduciary status, that no notice need be given to the class. (See, e.g., *Shelton v Pargo, Inc.,* 582 F2d 1298, *supra; Magana v Platzer Shipyard,* 74 FRD 61, *supra.*) We do not think this is quite satisfactory. In our adversary system of justice the court must rely on adversary attorneys to produce the necessary facts. But here, without some notice to the outside world and to possible other members of the class and their representatives (or at least the appointment of a special guardian), who is to find and present to the court considerations that may cast doubt upon the agreement of the attorneys for defendant and for the named plaintiffs for a settlement without notice?

On the whole, we think it is safer to adhere to that "uncompromising rigidity" by which in the past "the rule of undivided loyalty [has] been maintained". (*Wendt v Fischer, supra,* p 444.)

Fiduciary obligations should not be lightly assumed and cannot be lightly discarded.

Accordingly, the determination of Special Term should be affirmed. We have no occasion at this time to pass on what kind of notice would be adequate, or whether the individual plaintiffs would be free of their fiduciary obligations if they had applied to the court for class action certification or a determination of the propriety of class action status, and the court had finally determined that the action could not be maintained as a class action.

The order of Supreme Court, New York County, Special Term (H. SCHWARTZ, J.), entered December 2, 1980 denying approval of the settlement should be affirmed without costs.

The appeal from the order of September 9, 1980 should be dismissed, without costs, as superseded by the order of December 2, 1980.

SULLIVAN, J. P., CARRO and BLOOM, JJ., concur with SILVERMAN, J.; ROSS, J., concurs in the result only.

Order, Supreme Court, New York County, entered on December 2, 1980, unanimously affirmed, without costs and without disbursements. The appeal from the order of said court entered on September 9, 1980 is dismissed, without costs and without disbursements, as superseded by the order of December 2, 1980.