In the Matter of NATHAN RAHMEY, Appellant, v BARBARA BLUM, as Commissioner of the New York State Department of Social Services, et al., Respondents.

Second Department, August 29, 1983

APPEARANCES OF COUNSEL

*Westchester Legal Services, Inc.* (*Lawrence Alexander* and *Martin A. Schwartz* of counsel), for appellant.

*New York State Bar Association* (*Dana H. Freyer* of counsel), *amicus curiae.*

*Robert Abrams, Attorney-General* (*Maryellen Weinberg* and *Gerald Slotnik* of counsel), for State Commissioner, respondent.

*Samuel S. Yasgur, County Attorney* (*Lester D. Steinman* and *Annalinda P. Ragazzo* of counsel), for Charles W. Bates, respondent.

Rubin, J.

This appeal brings up for review the issue of awards of attorney's fees under section 1988 of title 42 of the United States Code.

Petitioner, a recipient of food stamps, commenced this proceeding pursuant to CPLR article 78 to set aside a determination of the State Commissioner of the Department of Social Services, dated September 19, 1980, made after a statutory fair hearing, which affirmed the Westchester County Department of Social Services (hereinafter agency's) decision to discontinue petitioner's food stamp authorization. In this proceeding, petitioner claimed that the discontinuance of his food stamp authorization was violative of section 1983 of title 42 of the United States Code in that the manner in which he was purportedly notified of the discontinuance deprived him of due process of law (US Const, 14th Amdt) and, additionally, the accounting method employed by the agency to calculate his self-employment income for the purpose of periodically reviewing his eligibility to receive food stamps failed to comply with the applicable Federal and New York State regulations. Petitioner had computed his net self-employment income using the method prescribed by the Internal Revenue Service for calculating the profit or loss from a business or profession, which, unlike the method employed by the agency, took into account a decrease in inventory. According to petitioner's calculations, an application of the accounting method prescribed by the Internal Revenue Service would render petitioner eligible for food stamps. Special Term concluded that the agency erred in failing to employ the method prescribed by the Internal Revenue Service when calculating petitioner's net self-employment income, since both the Federal and New York State regulations with respect to determining an applicant's eligibility for food stamps make constant reference to the rules of the Internal Revenue Service. By judgment entered July 24, 1981, Special Term annulled respondents' determination to discontinue petitioner's food stamp authorization and remitted the matter to the agency to recompute the petitioner's net self-employment for the period in question by

applying the method prescribed by the Internal Revenue Service. Special Term denied petitioner's request for attorney's fees on the authority of this court's determination in *Matter of Brennin v Kirby* (79 AD2d 396), which upheld a denial of an award of counsel fees to a litigant who may well have prevailed on a claim for which an award of counsel fees is authorized by section 1988 of title 42 of the United States Code, solely on the ground that the litigant was represented on a nonfee basis by a legal services organization.

On appeal, petitioner contends that, as the prevailing party in a section 1983 action, he was eligible to receive a reasonable attorney's fee under the Civil Rights Attorney's Fees Awards Act of 1976 (US Code, tit 42, § 1988), and it was error to deny an award on the ground he was represented on a nonfee basis by a publicly funded legal services organization.

Section 1988 of title 42 of the United States Code provides in pertinent part: "In *any* action or proceeding to enforce a provision of sections * * * 1983 * * * of this title, * * * the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs" (emphasis supplied).

At the outset we note that attorney's fees may be recovered pursuant to the Civil Rights Attorney's Fees Awards Act as part of the costs of a proceeding instituted in a State court to enforce a provision of section 1983 (*Maine v Thiboutot,* 448 US 1, 11; *Matter of Johnson v Blum,* 58 NY2d 454; *Matter of Ashley v Curtis,* 67 AD2d 828; *Matter of Bess v Toia,* 66 AD2d 844; *Young v Toia,* 66 AD2d 377).

Although section 1988 of title 42 of the United States Code notes that the decision whether to grant an award of attorney's fees is a matter of judicial discretion, the area in which such discretion may properly be exercised has been circumscribed by the rule that, in an appropriate case, a prevailing party "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." (*Newman v Piggie Park Enterprises,* 390 US 400, 402; *Christiansburg Garment Co. v Equal Employment Opportunity Comm.,* 434 US 412, 416-417; *Northcross v Memphis Bd. of Educ.,* 412 US 427, 428; *Matter of*

*Johnson v Blum, supra,* p 458; *Matter of Ashley v Curtis, supra;* see, also, Senate Rep No. 94-1011, 94th Cong, 2d Sess, p 4, US Code Cong & Admin News, 1976, vol 5, p 5912; H R Rep No. 94-1558, 94th Cong, 2d Sess, pp 5, 8.)

Recently, the Court of Appeals in *Matter of Johnson v Blum* (*supra*) has held that section 1988 should be broadly construed to require that the burden of proof rests upon respondents to establish that special circumstances exist which militate against àwarding a fee to a successful litigant (see, also, *Mid-Hudson Legal Servs. v G & U, Inc.,* 578 F2d 34, 37-38) and that burden is not met solely by submitting evidence that petitioner's counsel is a publicly funded legal services organization (see *Washington v Seattle School Dist. No. 1,* 458 US 457; *New York Gaslight Club v Carey,* 447 US 54, 70-71; *Holley v Lavine,* 605 F2d 638, cert den *sub nom. Blum v Holley,* 446 US 913; *Rodriguez v Taylor,* 569 F2d 1231, 1245, cert den 436 US 913). Consequently, to the extent this court concluded in *Matter of Brennin v Kirby* (*supra*) and its progeny that representation on a nonfee basis by a publicly funded legal services organization qualified as a special circumstance, this holding has been impliedly overruled and the denial of an award solely on this ground constitutes an abuse of discretion.

Before attorney's fees may be awarded under section 1988, there must be an affirmative finding as to whether the petitioner was a prevailing party in a proceeding embraced within section 1983 of title 42 of the United States Code.

Section 1983 provides: "Every person who, under color of any statute, ordinance, *regulation, custom, or usage,* of any State or Territory * * * subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the *Constitution and laws,* shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress" (emphasis supplied).

Section 1983 has been broadly construed by the United States Supreme Court to encompass claims based solely on a violation by the State of a right created by a Federal

statute, and is not limited to a Federal constitutional violation or a violation of a Federal statute providing for the protection of civil or equal rights (*Maine v Thiboutot,* 448 US 1, *supra*). In *Maine v Thiboutot* (*supra*) the majority of the court further concluded that an award of attorney's fees pursuant to section 1988 was available in every type of section 1983 action, including actions predicated solely on Federal statutory violations (see, also, *Maher v Gagne,* 448 US 122; *Matter of Johnson v Blum, supra,* p 458, n 2).

Consequently, in order to be eligible for an award of attorney's fees, petitioner at bar must have prevailed upon a bona fide claim that the agency's discontinuance of his food stamp authorization violated a right secured by the Food Stamp Act of 1964 or the Federal regulations[1] promulgated thereunder (see *Matter of Holley v Blum,* 75 AD2d 998).

Pursuant to section 2014 of title 7 of the United States Code. (the Food Stamp Act of 1964), the Department of Agriculture was authorized to enact regulations which would establish uniform national standards of eligibility for participation by households in the food stamp program. Accordingly, the Department of Agriculture enacted regulations for determining an applicant's monthly income from self employment (see 7 CFR 273.11 [a] [1], [2], [4]). The State Commissioner, who is authorized to implement the food stamp program and to calculate an individual household's eligibility, enacted identical regulations (see New York State Food Stamp Certification Manual, § X, e[3]).

Special Term adopted petitioner's construction of the applicable Federal and State regulations as requiring the application of the accounting method prescribed by the Internal Revenue Service for calculating an applicant's net self-employment income in order to determine a household's food stamp budget. Respondents conceded that the accounting practice employed by the agency, which did not take into account a decrease in inventory when calculating self-employment income, was inconsistent with the ac-

---

1. It is well settled that validly issued administrative regulations have the force and effect of law. (*Rodway v United States Dept. of Agric.,* 514 F2d 809, 814; *Matter of Jeffers v Duffy,* 52 AD2d 730.)

counting method prescribed by the Internal Revenue Service, which did consider this factor.

Although Special Term's determination did not construe respondents' regulations to be inconsistent with the Federal regulations, the court necessarily found that the accounting practice of the agency and its approval by the State Commissioner, as evidenced by her affirmance of the agency's determination to discontinue petitioner's food stamp authorization, constituted a State usage in violation of not only the State regulations but also the Federal regulations applicable to calculating an applicant's self-employment income.[2] Moreover, the application of a different accounting method by respondents would result in nonuniform standards for determining a household's eligibility to participate in the food stamp program, in violation of the Federal statutory mandate to have uniform national standards of eligibility (see US Code, tit 7, § 2014). Under these circumstances, we find that petitioner had presented and prevailed on a claim within section 1983 of title 42 of the United States Code.

The two issues, whether a litigant has prevailed on a Federal claim for which an award of counsel fees is authorized by section 1988, and, whether special circumstances exist which militate against awarding attorney's fees, are threshold questions to be determined by Special Term. However, in the instant case, this court can answer both questions from a review of the record on this appeal.

Since petitioner was the prevailing party in a proceeding to enforce a provision of section 1983 of title 42 of the United States Code, and respondents have not established a special circumstance warranting the denial of an award of attorney's fees pursuant to section 1988 of said title, petitioner's request for attorney's fees is granted and the matter is remitted to the Supreme Court, Westchester County, to determine a reasonable attorney's fee.

Although a determination as to the proper amount of an award of attorney's fees lies largely within the discretion of

2. We note that fees may be awarded even though relief is awarded on State grounds if petitioner seeks relief on both State and Federal grounds. Where petitioner prevails on the nonfee claim, he is entitled to a determination on the claim encompassed under one of the Federal Statutes covered by the Fees Act, if nonconstitutional, for purposes of awarding fees (*Matter of Johnson v Blum*, 58 NY2d 454, 458, n 2, *supra*).

the court (*Cohen v West Haven Bd. of Police Comrs.*, 638 F2d 496, 505; *Gagne v Maher,* 594 F2d 336, 344, affd 448 US 122, *supra*), the discretion is not unlimited. There are many parameters that affect the value of legal services and which, therefore, must be considered by the court in evaluating a fee request.

In formulating varying guidelines to aid the courts in fulfilling the Federal statutory mandate to award reasonable attorney's fees, the Federal circuit courts have highlighted the significant factors which must be taken into consideration. Since we are of the opinion that merely listing these factors would not provide meaningful guidance, the following analytical framework for their application has been set forth to aid the courts in computing a reasonable attorney's fee.

### A. HOURS REASONABLY EXPENDED

In assessing fees under section 1988, the court should first ascertain the nature and extent of the services supplied by the attorney from a contemporaneous time sheet indicating the date, number of hours worked, an explanation of how the hours were spent (*New York State Assn. for Retarded Children v Carey,* 711 F2d 1136; *Cohen v West Haven Bd. of Police Comrs.,* 638 F2d 496, *supra*) and identifying the specific claim to which the hours pertain (see *Hensley v Eckerhart,* 461 US __, 51 USLW 4552, 4555). Counsel for the prevailing party should exercise "billing judgment" when submitting a fee request. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority" (*Copeland v Marshall,* 641 F2d 880, 891). The hours claimed need not be automatically accepted and if inadequately documented, should be disallowed (*Hensley v Eckerhart,* 461 US __, 51 USLW 4552, 4554, *supra*). The Judge should weigh the hours claimed against his own knowledge, experience and expertise as to the time required to complete similar activities (*Johnson v Georgia Highway Express,* 488 F2d 714). Hours which reflect duplication of services (see *Gagne v Maher, supra,* p 345; *Bonner v Coughlin,* 657 F2d 931, 933-935), or inefficiency (*Seigal v Merrick,* 619 F2d

160, 164, n 9; *Equal Employment Opportunity Comm. v Sage Realty Corp.*, 521 F Supp 263, 269) or padding, i.e., hours that are excessive or otherwise unnecessary, are to be disallowed (*Hensley v Eckerhart, supra,* p __, pp 4554-4555; *Copeland v Marshall, supra; Johnson v Georgia Highway Express, supra,* p 717). If a Judge decides to eliminate hours of service adequately documented by the attorneys, he must identify those hours and articulate his reasons for their elimination (*Northcross v Board of Educ.,* 611 F2d 624, 637, cert den 447 US 911).

Furthermore, "[i]t is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it" (*Johnson v Georgia Highway Express, supra,* p 717). As to legal work, it is appropriate to differentiate between time expended for in-court services and the time expended for out-of-court services (see *Northcross v Board of Educ., supra,* p 638; *Miller v Carson,* 563 F2d 741, 756).

Hours reasonably spent by counsel in preparing the fee application and in litigating a fee award are also compensable (see *Gagne v Maher,* 594 F2d 336, 343-344, *supra;* see, also, *Lund v Affleck,* 587 F2d 75, 77; *Johnson v State of Mississippi,* 606 F2d 635, 638; *Northcross v Board of Educ., supra,* p 637; *Prandini v National Tea Co.,* 585 F2d 47, 52-54). However, if the fee claims are exorbitant or the time devoted to presenting them is unnecessarily high, the Judge may refuse further compensation or grant it sparingly (*Gagne v Maher, supra,* p 344; *Lund v Affleck, supra,* p 77).

### B. REASONABLE HOURLY RATE

The next step in determining an award of attorney's fees is to arrive at a reasonable hourly charge for each category of service rendered (see *Cohen v West Haven Bd. of Police Comrs.,* 638 F2d 496, *supra; Northcross v Board of Educ., supra,* p 638; *City of Detroit v Grinnell Corp.,* 495 F2d 448, 469).

As a general proposition, the reasonable hourly rate should be based on the customary fee charged for similar services by lawyers in the community with like experience and of comparable reputation to those by whom the prevailing party was represented (see *Johnson v Georgia Highway Express, supra; Northcross v Board of Educ., supra,* p 638). Experience includes not only the number of years of practice but also the nature of the practice engaged in (*Equal Employment Opportunity Comm. v Sage Realty Corp., supra,* p 269). "In most communities, the marketplace has set a value for the services of attorneys, and the hourly rate charged by an attorney for his or her services will normally reflect the training, background, experience and skill of the individual attorney. For those attorneys who have no private practice, the rates customarily charged in the community for similar services can be looked to for guidance" (*Northcross v Board of Educ., supra,* p 638).

Since attorney's fees awards are to be measured by the market value of the services performed, awards to non-profit law offices should be calculated at billing rates of private attorneys of comparable skill and experience (*Copeland v Marshall,* 641 F2d 880, 889, *supra; Rodriguez v Taylor,* 569 F2d 1231, 1248, *supra; Mid-Hudson Legal Servs. v G & U, Inc.,* 578 F2d 34, *supra; Torres v Sachs,* 538 F2d 10, 13), as modified by certain differentials which exist between private attorneys and nonprofit law offices. Because billing rates employed by private attorneys contain three components (the billing attorney's compensation, a share of the firm's overhead, and some profit for the firm), an award to nonprofit lawyers based upon billing rates charges by profit-making lawyers inevitably produces a windfall. The profit component is a questionable ingredient in a reasonable fee for a nonprofit law firm and the two remaining components of a private firm's billing rate often reflect much higher expenses than those incurred by a nonprofit office. Consequently, in order to avoid windfalls to nonprofit law offices, the market value rate is to be subjected to a ceiling known as the break point rate. The break point rate is the market value rate above which private billing rates include a profit component and an

overhead cost so significantly above that of nonprofit law offices that use of such rate would produce a windfall for nonprofit offices (see *New York State Assn. for Retarded Children v Carey,* 711 F2d 1136, *supra*). Nonprofit law offices should not receive fees calculated at rates above the selected break point.

### C. COMPUTATION OF LODESTAR FEE

The third step is to multiply the number of hours reasonably expended on the litigation by the reasonable hourly rate (see *Hensley v Eckerhart, supra,* p ___, p 4554; *Cohen v West Haven Bd. of Police Comrs., supra; Thomas v Board of Educ.,* 505 F Supp 102; cf. *City of Detroit v Grinnell Corp., supra; Washington Fed. Sav. & Loan Assn. v Village Mall Townhouses,* 90 Misc 2d 227, 230-231; *Copeland v Marshall,* 641 F2d 880, *supra; Lindy Bros. Bldrs. of Phila. v American Radiator & Std. Sanitary Corp.,* 487 F2d 161 [*Lindy I*]; *Lindy Bros. Bldrs. of Phila. v American Radiator & Std. Sanitary Corp.,* 540 F2d 102 [*Lindy II*]). The basic fee generated by this computation is known as the lodestar fee (*Cohen v West Haven Bd. of Police Comrs., supra; Copeland v Marshall, supra*). This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services (*Hensley v Eckerhart, supra,* p ___, p 4554; *New York State Assn. for Retarded Children v Carey, supra*).

### D. ADJUSTMENTS TO LODESTAR FEE

The product of reasonable hours times a reasonable rate does not end the inquiry. As the final step in the computation of a reasonable fee award, the initial estimate, predicated essentially on objective factors, may be augmented or reduced by the courts, to take into account the following subjective factors (see *Hensley v Eckerhart, supra,* p ___, p 4555), first suggested by the United States Court of Appeals for the Fifth Circuit in its oft-cited decision *Johnson v Georgia Highway Express* (488 F2d 714, *supra*): (1) the novelty and difficulty of the questions presented; (2) the skill requisite to perform the legal services properly; (3) the preclusion of other employment by the attorney due to acceptance of the case; (4) whether the fee is fixed or contingent; (5) time limitations imposed by the client or

the circumstances; (6) the nature and length of the professional relationship with the client; (7) *the amount involved and the results obtained;* (8) the undesirability of the case; and (9) awards in similar cases. It should be noted that many of these factors may have been subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate (*Hensley v Eckerhart, supra,* p __, p 4555, n 9; see *Copeland v Marshall,* 641 F2d 880, 890, *supra; Northcross v Board of Educ.,* 611 F2d 624, 642-643, *supra*).

In connection with the fixation of fees, a problem may arise where the prevailing party is not successful on all the claims asserted in the litigation. The United States Supreme Court recently held in *Hensley v Eckerhart (supra)* that the extent of a prevailing party's success is a "crucial factor" in determining the proper amount of an award of attorney's fees under section 1988 of title 42 of the United States Code. "Where the [party seeking a fee award] has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a [prevailing party] who has won substantial relief should not have his attorney's fee reduced simply because the * * * court did not adopt each contention raised. But where the [prevailing party] achieved only limited success, the * * * court should award only that amount of fees that is reasonable in relation to the results obtained" (*Hensley v Eckerhart, supra,* p __, p 4556).

Another factor to be considered is the attorney's risk of litigation. The contingency adjustment is a percentage increase in the lodestar fee to reflect the risk that the lawsuit would be unsuccessful and that no fee at all would be obtained. However, it is not a percentage increase based on the amount of recovery (*Northcross v Board of Educ., supra; Copeland v Marshall, supra,* pp 892-893; *Cohen v West Haven Bd. of Police Comrs.,* 638 F2d 496, 505, *supra; Bonner v Coughlin,* 657 F2d 931, 936, *supra; City of Detroit v Grinnell Corp.,* 495 F2d 448, *supra; Harradine v Board of Supervisors of Orleans County,* 84 AD2d 919).

Although a contingency adjustment may be appropriate in some cases to entice private firms to undertake difficult cases in which victory is uncertain, we believe that the promise of such rewards is not needed to induce nonprofit organizations, like petitioner's representative, which have been created and are paid for performing those very services. Therefore, in fee awards for nonprofit law offices, an increase in the lodestar fee should not include any increment for the uncertain risk of achieving success in the litigation (*New York State Assn. for Retarded Children v Carey, supra; McManama v Lukhard*, 464 F Supp 38, 43, affd 616 F2d 727; *Cole v Tuttle*, 462 F Supp 1016, 1019).

Whenever the court augments or reduces the lodestar fee, it must state its reasons for doing so as specifically as possible (see *Hensley v Eckerhart, supra,* p __, p 4556; *Harkless v Sweeny Ind. School Dist.,* 608 F2d 594, 596; *Gagne v Maher, supra,* p 345; *Cohen v West Haven Bd. of Police Comrs., supra,* p 505). In the absence of such a statement, it will be difficult, if not impossible, for the reviewing court to determine whether the award was within the proper exercise of the court's discretion (*Cohen v West Haven Bd. of Police Comrs., supra*).

As a caveat to applying the guidelines contained herein, we reiterate that the courts must keep in mind that the purpose of the Civil Rights Attorney's Fees Awards Act is to attract qualified and competent attorneys without affording any windfall to those who undertake such representation (*Northcross v Board of Educ., supra,* p 638).

In conclusion, since petitioner prevailed on a claim for which an award of counsel fees is authorized by section 1988 of title 42 of the United States Code and since the fact petitioner was represented by a publicly funded legal services organization does not qualify as a special circumstance militating against an award of attorney's fees; the matter is remitted to the Supreme Court, Westchester County, for a hearing and the entry of an order fixing a reasonable fee which reflects the factors set forth in this opinion. Additionally, since petitioner is the prevailing party on this appeal, we award him fees for his endeavors here, in an amount to be determined by Special Term

(*Cohen v West Haven Bd. of Police Comrs., supra,* p 506; *Northcross v Board of Educ., supra,* p 637).

BRACKEN, J. P., NIEHOFF and BOYERS, JJ., concur.

Judgment of the Supreme Court, Westchester County, entered July 24, 1981, reversed insofar as appealed from, on the law, with one bill of costs payable by the respondents to the appellant, and matter remitted to the Supreme Court, Westchester County, for further proceedings consistent herewith.