OPINION OF THE COURT
John Manning Regan, J.
The questions in this case which remain open for decision are whether plaintiffs’ attorneys are entitled to an award of attorneys’ fees under the Magnuson-Moss Warranty Act (88 US Stat 2183, 15 USC § 2301 et seq.) and, if they be so entitled, what shall be the amount of said fees.
The Supreme Court has transferred this case, under CPLR 325 (d), to this court for hearing and judgment. Accompanying the order of transfer, which was dated January 21, 1989, was a prior order of the Supreme Court dated August 24, 1988, which settled the principal claims between the parties, but reserved the question of attorneys’ fees — both as to entitlement and amount — for future determination here.
The complaint alleged a breach of warranty arising from *20 the plaintiffs’ purchase from defendant of a new GMAC Suburban truck on February 29, 1988. The gravamen of the breach was the truck’s latent frame damage, sheet metal warpage, and consequential misalignment of doors, window frames, and transoms. The remedy plaintiffs sought was a rescission of the contract and a full refund of the purchase price. The settlement order of August 24, 1988 — entered upon a stipulation of settlement in open court — granted a full refund of the purchase price, including sales tax, and interest, to plaintiffs. The defendant accepted the return of the truck, driven a total of 837 miles.
Most importantly, however, the original pleadings also notified the defendant that plaintiffs sought, in addition to a full refund of the purchase price, an award of reasonable attorneys’ fees "as provided for under the Federal Warranty Act.”[1]
After several prehearing conferences failed to resolve the differences between the parties, this court ordered and held a plenary hearing on the question of attorneys’ fees on May 9 and 11, 1989.
Both the plaintiff and his attorney testified at the hearing.
As a witness for the plaintiff, Mr. Shoolman stated that the court should award, as attorneys’ fees, the sum of $7,350 (49 hours at $150 per hour) plus an incremental factor of either .33 or .66 because of the case’s difficulty and time limitations; in other words, a sum somewhere between $9,775 and $12,201. The 49 hours included 11.6 hours of time devoted to the preparation of the fee application, and the hearing thereon. He cited the fee award guidelines set forth in Matter of Rahmey v Blum (95 AD2d 294, 300-305 [2d Dept 1983]) as case law governing his claims.
Mr. DeVries’ testimony elicited the details of the transactions between him and Mr. Shoolman, his attorney. On April 15, 1988, IV2 months after he purchased the GMAC truck, he and Mr. Shoolman signed a retainer agreement. That agreement stipulated to an hourly rate of $100 for legal services, but also stated in a later paragraph: "The amount of reasonable attorneys’ fees may be more than the rate above and will be set by the Court or by agreement with the dealer or GM after all other terms of settlement are decided.”
*21 The obligation to pay fees under the retainer contract did not depend on whether plaintiffs prevailed in the suit.
The defendant’s position at the hearing, and in subsequent memoranda submitted to this court, has been that the stipulation of settlement in open court on August 3, 1988 provided specifically that it was "in full satisfaction of all claims the plaintiff has against the defendant.”
Moreover, the defendant urged that because the plaintiffs did not comply with the provisions of 15 USC § 2310 (e) — a section which compels a consumer to afford a warrantor a reasonable opportunity to cure defects in the product prior to suit — the entire action must fall, including the demand for attorneys’ fees.
Finally, defendant has contested the requested amount of fees on the ground of exorbitancy.

(a) The Question of Entitlement

This court, accordingly, shall now examine the text (and legislative history) of this Federal statute to ascertain whether it authorizes a court to grant this application for attorneys’ fees under these circumstances.
The pertinent section of the Magnuson-Moss Warranty Act is 15 USC § 2310 (d) (2), which reads as follows: "(2) If a consumer finally prevails in any action brought under paragraph (1) of this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys’ fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, unless the court, in its discretion shall determine that such an award of attorneys’ fees would be inappropriate.”
A facial reading of this statute suggests the following cumulative conditions must exist before an award of attorneys’ fees is authorized:
1. The consumer plaintiff is the proper party to seek the allowance of attorneys’ fees.
2. An award of attorneys’ fees is permissible only when the plaintiff has finally prevailed in a legal action and is ready to enter a judgment.
3. The attorneys’ fees awarded must be computed on the basis of actual time spent by the attorney on the case, and no other, more generalized basis is permitted.
*22 4. The fees must have been "reasonably incurred” in connection with the prosecution of the case.
5. The court, in its discretion, may deny an application for attorneys’ fees whenever it would be inappropriate to allow them.
These cumulative conditions are the formal components of every application for attorneys’ fees under the MagnusonMoss Warranty Act and an applicant must satisfy each one of them if he is to succeed.
In this case, it appears that the plaintiffs’ claims for attorneys’ fees may perhaps fail to satisfy the requirement that they, as plaintiffs, "finally prevail” in an action and be entitled to enter a judgment. For, as all parties hereto admit, this case was settled in open court, a court order dated August 24, 1988 was entered thereon, and the settlement process has happened: the truck has been returned, and the purchase price has been repaid.
There are no New York cases interpreting this language in section 2310 (d) (2).[2] Reported cases from other States have not addressed the issue of whether a settlement of an action under a warranty claim constitutes a case in which the plaintiff has "finally prevailed” in the same sense as if he had recovered a judgment.
For this reason, this court has researched the original committee reports of the United States Senate and House of Representatives which sent this legislation to the floor of the Congress. The earliest of these reports to contain language *23 approximating that in the bill which the Congress ultimately enacted[3] is the Senate Commerce Committee Report of May 14, 1973 (S Rep No. 151, 93rd Cong, 1st Sess).
In the "Summary and Purpose” portion of this report, the committee announces that the bill allows an average consumer to pursue his legal remedies, and adds at page 3: "such pursuit is made economically feasible by the provision in the bill which awards reasonable attorneys’ fees (based on actual time expended) and court costs to any successful consumer litigant.”
In the "Background and Need” portion of the report (at 7-8), the committee asserts that since enforcement of warranties through the courts has become prohibitively expensive: "there is a need to insure warrantor performance by monetarily penalizing the warrantor for non-performance, and awarding that penalty to the consumer as compensation for his loss. One way to effectively meet this need is by providing for reasonable attorneys’ fees and costs to successful consumer litigants thus making consumer resort to courts feasible.”
These policy objectives which the committee attributed to the proposed legislation describe the person to benefit as a "successful consumer litigant”, not simply a consumer who has "finally prevailed” in an action. The preamble of the report, then, encompasses a group of persons significantly broader than that which the statutory language embraces.
Finally, however, in the "Section-by-Section Analysis” portion of the report, the committee describes the language of section 110 of the Magnuson-Moss Warranty Act.[4] In that analytical description the committee alleges at pages 22 and 23: "Sec. 110 spells out the remedies available to the purchasers of consumer products. A purchaser can utilize informal dispute settlement procedures established by suppliers, or, having afforded a supplier a reasí íable opportunity to cure, may resort to formal adversary proceedings with reasonable attorneys’ fees available if successful in the litigation (including settlements).”
In all parts of this Senate Commerce Committee Report— *24 the summary, the preamble, and the section-by-section analysis parts — the language in the bill "finally prevail in any suit or proceeding” is construed to mean a successful consumer litigant; and in the analysis section of the report, the word successful is reported to include settlements.
This Senate Commerce Committee Report led ultimately, without significant change in the language of the bill, to the conference reports of the House and Senate in December 1974,[5] which conference reports were the immediate precursors to the passage of the act on January 4, 1975.
This court, as a result of this legislative history, must conclude therefore that the statutory language of 15 USC § 2310 (d) (2), viz., "a consumer [who] finally prevails in any action” includes a consumer who succeeds in the litigation by means of settlement as well as one who succeeds by means of verdict and judgment. And, accordingly, the consumer who settles, as well as the consumer who wins a judgment, are both entitled, under the act, to an award of reasonable counsel fees.

(b) The Defendant’s Defenses

Two of the defenses proffered at the hearing deserve but scant consideration. They are (1) that the settlement agreement, by its terms, was in full satisfaction of all claims including claims for attorneys’ fees, and (2) that plaintiffs did not afford the defendant an opportunity to cure the defects as 15 USC § 2310 (e) mandates as a condition precedent to any suit.
The first defense contradicts the terms of the order of the Supreme Court, dated August 24, 1988, which order referred the question of attorneys’ fees to this court despite the terms of the settlement agreement. The only remedy the defendant had, at that point, was an appeal from that order. Defendant has not appealed. The order is now final, and this court cannot review or repeal it. (Belski v New York Cent. R. R., 38 AD2d 882 [4th Dept 1972].)
The second defense is a substantive issue for the court *25 which tries the principal action, not for the court to which specific issues of fact and law have been referred for decision. The defendant settled the principal action agreeing to a rescission of the contract of sale and a refund of the purchase price. That settlement agreement did not reserve the issue of whether the plaintiffs’ action was legally brought, and, accordingly, that issue has been subsumed in the settlement agreement; for if this court were to entertain the question of the legality of the suit itself, a decision of illegality would vitiate the settlement order of the Supreme Court, an order which has now become final, and the law of this case. (George W. Collins, Inc. v Olsker-McLain Indus., 22 AD2d 485 [4th Dept 1965].)

(c) The Amount of Attorneys’ Fees

The defendant’s objection to this application on the ground of exorbitancy has merit. Firstly, since plaintiffs recovered in their rescission of the purchase contract only the full purchase price — $19,000—a demand for more than half that sum as attorneys’ fees seems disproportionate to the economic realities in this litigation. Secondly, a demand for a rate of $150 per hour for legal services against defendant where the plaintiffs’ attorney has previously agreed to a rate of $100 per hour with his own clients seems inequitable notwithstanding the retainer agreement’s caveat that a higher rate might result if the court sets the fee.
In any event, to fix a fee, the court must return to the Federal statute (15 USC § 2310 [d] [2]) because plaintiffs’ counsel has asked that this court follow the rules of fee allocation set out in Matter of Rahmey v Blum (95 AD2d 294, supra), and the court must first consult the Federal law to ascertain whether Rahmey is consistent with that statute.
The Rahmey case (supra) concerned an award of counsel fees under 42 USC § 1988 — the Civil Rights Attorney’s Fees Awards Act. While much is similar between 42 USC § 1988 and 15 USC § 2310, there happens to be a critical difference. Under section 1988 the only limiting statutory standard is the reasonableness of the attorneys’ fee. Under section 2310 (d) (2), however, there is a clear limitation set out as a specific statutory standard, viz., attorneys’ fees shall be "based on actual time expended”.
Again, the Report of the Senate Commerce Committee is *26 illuminating.[6] The Congress adopted this specific standard not to constrain a court in its awards of attorneys’ fees to successful consumer litigants, but to provide adequate compensation to lawyers willing to undertake representation of consumers who have purchased defective products at modest or minimal cost and to whom the costs of warranty enforcement by litigation would be prohibitive in comparison with the amounts in controversy in that litigation.
The committee’s commentary on the point, at page 24 of its report, follows: "It should be noted that an attorneys’ fee is to be based upon actual time expended rather than being tied to a percentage of the recovery. This requirement is designed to make the pursuit of consumer rights involving inexpensive consumer products economically feasible.”
This statutory history narrows the focus of a court’s inquiry on a fee application under section 2310 (d) (2). There are but two issues: (1) How many hours did the plaintiffs’ attorney actually expend, and (2) What is the hourly rate which the plaintiff has "reasonably incurred” for legal services. Upon determination of the actual number of hours expended and the hourly rate reasonably incurred, the statute obliges the court to multiply these factors and set that product as the legal fee.
Rahmey and the Federal and State cases cited therein identify this particular calculation as the "lodestar fee” (supra, 95 AD2d, at 300-303), the fundamental guidepost which serves as the incompressible bedrock underpinning the value of all legal services. Rahmey’s instructions, moreover, advise the courts who award such fees that calculating the lodestar fee is the beginning point from which a court may make adjustments to increase the fee. The predicates for such adjustments are the subjective and individualized circumstances of the particular case such as: difficulty, skills, lost opportunities elsewhere, time limitations, the amounts involved, and foreseeable risks pertinent to the recovery of a judgment or to the payment of any fee.
Plaintiffs’ counsel urged that because of the difficulty of this case, and because the plaintiffs imposed severe time constraints, and because his skills in this kind of litigation are superior, an incremental factor of .33 to .66 should be added to the lodestar fee. Such an upward adjustment is consistent with Rahmey, but inconsistent with the statute. (15 USC *27 § 2310 [d] [2].) The statute, in effect, forbids any adjustments to the lodestar fee, either upwards or downwards, and mandates that the lodestar calculation shall become the fee.
Actual hours expended in this case according to plaintiffs’ counsel are 49. There is no contrary allegation from the defendant, and the hearing yielded no contrary proof. And, although Rahmey (supra) asks the court to discriminate between hours a lawyer spends on legal work as such, and the hours he spends on correlated work other than pure legal work, the statute, again, permits no such distinction, but demands equal treatment for all "actual hours expended”.
The 49 hours do include, however, 11.6 hours devoted to the preparation and presentation of the fee application itself. As to this question, the rules in Rahmey (supra) require that the court add this time to the lodestar calculation. The statute is silent on the issue.
Accordingly, the court finds that the plaintiffs’ counsel has actually expended 49 hours in the prosecution of this case.
The final question is what hourly rate shall apply: the $100 rate in the retainer contract, or the $150 rate that counsel has argued is reasonable.
The statute again provides the answer. It says that the fees a court shall award shall be derivative, i.e., they shall parallel the costs and expenses "reasonably incurred by the plaintiff”. Under such a statutory injunction, a court, in the circumstances of this case, must allow what the attorney has agreed to with his client so long as that hourly rate is reasonable. In this case, the retainer agreement sets an hourly rate of $100— and that rate is reasonable as a matter of law in this Department (Larkin v Present Co., 152 AD2d 1005 [appeal No. 2] [July 12, 1989]).
Upon the application and all the evidence, therefore, the court fixes the sum of $4,900 as the attorneys’ fee in this case, and grants plaintiffs a judgment therefor, in that sum, against the defendant, together with a bill of costs. Interest shall not accrue on this award until 60 days have passed from the filing of this judgment together with notice of entry thereof. In accordance with CPLR 5020 (b), the court orders that the attorneys-of-record for the plaintiffs herein are necessary parties to the entry of any satisfaction piece in respect to this judgment.

. Failure to sue for these fees in the original complaint serves as a basis for denial of a fee application as "inappropriate”. (Peterson v Bendix Home Sys., 318 NW2d 50 [Sup Ct, Minn 1982].)

. The case of Avena v Ford Motor Co. (85 AD2d 149 [1st Dept 1982]) obviates the interpretation issue because, in that case, the proposed settlement agreement, by its terms, provided for payment of attorneys’ fees. That is not the case herein.
Several New York cases cite comparisons between our "Lemon Law” (General Business Law § 198-a [l) and the Magnuson-Moss Warranty Act, e.g., General Motors Corp. v Smaller (142 Misc 2d 497 [Sup Ct, Nassau County 1988]) and Matter of General Motors Corp. v Fischer (140 Misc 2d 243 [Sup Ct, Broome County 1988]), but on the question of whether attorneys’ fees are allowed after a successful arbitration, not after a court settlement. The most extended comparisons, however, are found in Matter of Subaru v McKelvey (141 Misc 2d 41 [Sup Ct, Monore County 1988]) wherein the analogies between the two pieces of legislation are explored in depth to bolster a decision which excludes successful arbitration awards under the Lemon Law from the ambit of attorney’s fees awards just as the MagnusonMoss Warranty Act excludes an award of attorneys’ fees from the informal dispute resolution procedures set up under that act.
However, none of the cases deals with an award of attorneys’ fees after a suit has been commenced, but is settled prior to judgment.

. The Senate Bill, S 356, in the relevant paragraph (§ 110 [d] [2]) used the word purchaser rather than consumer and plaintiff. Also the phrase "for breach of express or implied warranty” was removed later in favor of "brought under par (1) of this subsection”. Otherwise S 356 and the final conference version which ultimately passed are the same. (See, S Rep No. 151, 93rd Cong, 1st Sess 38 [1973].)

. This section is set forth as 15 USC § 2310.

. See HR Conf Rep No. 1606, 93rd Cong, 2d Sess (1974) and S Conf Rep No. 1408, 93rd Cong, 2d Sess (1974). These conference reports followed congressional hearings in the House in March 1973, and June 1974. While little else is contained in these conference reports about the meaning of section 2310 (d) (2), nothing in them contradicts or distinguishes the prior Senate version as reported by the Senate Commerce Committee on S 356.

. S Rep No. 151, 93rd Cong, 1st Sess (1973).