APC Ventures, Inc. v Rechler (2025 NY Slip Op 25182)

[*1]

APC Ventures, Inc. v Rechler

2025 NY Slip Op 25182

Decided on August 4, 2025

Supreme Court, Suffolk County

Hudson, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on August 4, 2025
Supreme Court, Suffolk County

APC Ventures, Inc.; AMITY VENTURES, LLC; WILLIAM SCOTT FITZ GIBBONS; individually and as Trustee; BLUMBERG LIMITED PARTNERSHIP; and FRONTIER PARK CO., LLC, Plaintiffs,

against
Gregg Rechler; MITCHELL RECHLER; NEW FRONTIER 1 LLC; NEW FRONTIER II LLC; RECHLER EQUITY LLC a/k/a RECHLER EQUITY PARTNERS LLC; 10 GREYBARN LANE LLC; 20-30 GREYBARN LANE LLC; 40-50 GREYBARN LANE LLC; 60-70 GREYBARN LANE LLC; 10 GBL LLC; 20-30 GBL LLC; 40-50 GBL LLC; and 60-70 GBL LLC, Defendants.

Index No. 610299/2023

JASPAN SCHLESINGER NARENDRAN
Attorneys for the Plaintiffs
300 Garden City Plaza, 5th Floor
Garden City, NY 11530
HERRICK FEINSTEIN, LLP
Co-Counsel for the Defendants
2 Park Avenue
New York, NY 10016
HAMBURGER & YAFFE, LLP
Co-Counsel for the Defendants
191 New York Avenue
Huntington, NY 11743

James Hudson, J.

"The matter of fees is important, far beyond the mere question of bread and butter involved. Properly attended to, fuller justice is done to both lawyer and client."[FN1]

The instant application is for an award of legal fees by the prevailing party in a lawsuit. The Court was obliged to consider whether the proof submitted satisfied the criteria for a reasonable fee. For the reasons discussed below, the development of the Commercial Courts and Commercial Bar in New York State obliges us to recognize an expansive definition of the term "Community" as applied to attorney's recompense.
This case is an action for damages, sounding in contract. The parties had entered into an agreement (and formed an LLC) for the development of certain realty in Suffolk County, New York. The facts of this case were set forth at length in the Court's decision of February 4th, 2024 and are incorporated by reference. The Defendants' motion for dismissal pursuant to CPLR 3211 (a) (1) was granted (NYSCEF Doc. 38). Thereafter, the Plaintiffs moved for reargument. Upon reconsideration of the motion, the Court adhered to its original determination (decision dated 7/30/24 NYSCEF Doc. 60).
As the prevailing party, the Defendants sought legal fees as provided in the contract, specifically § 12.15 of the Agreement which reads as follows:
If any action is brought by any Member against another Member, in connection with or arising out of this Agreement, the prevailing party shall be entitled to recover from the other party reasonable attorneys' fees and expenses incurred in connection with the prosecution or defense of such action.
In deciding the question of how much to award in legal fees, the Court set the matter down for an evidentiary hearing.
The hearing proceeded as follows:
Initially, the Court received the affirmation of Richard Hamburger Esq. in lieu of direct testimony and allowed Mr. Camhi, Plaintiff's Counsel, to proceed with his cross-examination.
In his affirmation of legal services (NYSCEF Doc. 84), Mr. Hamburger detailed his extensive experience as an attorney since being admitted in 1978. Beginning as a law clerk to Associate Justice of the Court of Appeals Bernard Meyer, of happy memory, Mr. Hamburger has obtained (and applied) a vast experience in the field of commercial law. He described both his and his partner (David Yaffe Esq.'s) specific work and expenditure of hours on behalf of his clients in this case. Accompanying Mr. Hamburger's affidavit was a copy of the invoices which supported his averments. This document (consisting of 15 pages) showed the date, hours, rate [*2]and description of legal services from 7/17/2023 through 7/31/2024.
Mr. Hamburger testified that he billed the Rechlers at his "rack rate" of $625 per hour, which he said is customary for someone with his experience (Hrng. Tr. 13:13-14:20).
The invoices total the sum of $47,562.50. Counsel, however, indicated that his firm is not seeking $1,187.50 for certain redacted entries.
Mr. Hamburger also added that ". . . the lion's share of the drafting and legal research for the successful motion papers was performed for Defendants by Herrick . . . " (Nyscef Doc 84 at 27)
Belinda Schwartz (executive chair of the Herrick Feinstein) was also called by the Plaintiff. She was shown Plaintiff's exhibit 1, a block billing statement. Ms. Schwartz also testified that she had participated in a series of "all hands" calls with the client. She billed for 43 hours at a rate of $985.00 in 2023 and 6 hours at a rate of $1,035.00 in 2024 This required the participation of several lawyers from the firm.
Mr. Fried Co-Chair of the litigation Department of Herrick Feinstein was also subject to Plaintiff's examination. He was Mr. Ross's supervisor. As such, he reviewed the latter's work product and participated in at least 24 telephone calls with the client.
Mr. Ross was called to the stand. He stated that it took 97.7 hours to write the initial draft of the motion to dismiss and another 50 hours were expended on draft revisions
The total fee requested by the Defendants is the sum of $417,368.82. This represents $ 46,375.00 on behalf of Hamburger and Yaffe; $ 345,594.15 from Herrick, Feinstein LLP plus $ 25399.67 in disbursements. The Plaintiffs object to this amount as being unreasonably high. The gravamen of their argument is that the Herrick firm utilized an unnecessarily large number of attorneys, and the claimed hours were excessive. Additionally, Plaintiff says that the hourly rate for the Herrick firm should be lowered to the rate charged by Mr. Hamburger's firm.
In deciding the question of an attorney's fee, the Court is guided by the standard of reasonableness. This policy, however, must translate into a specific dollar amount. This sum is obtained by considering inter alia,
(1) the time and labor required, the difficulty of the questions involved, and the skill required to handle the problems presented; (2) the lawyer's experience, ability, and reputation; (3) the amount involved and benefit resulting to the client from the services; (4) the customary fee charged for similar services; (5) the contingency or certainty of compensation; (6) the results obtained; and (7) the responsibility involved [citations omitted] Neeman v. Smith, 227 AD3d 818, 821, 211 NYS3d 199 (2d Dept 2024)
The last factor - "responsibility involved", refers to the attorneys' control over the litigation, and the level of services by attorneys so engaged ". . . both in the executive and [*3]practical management of the matter, and in the treatment of the legal questions." Golden v. Aldell Realty Corp., 70 NYS2d 341, 344 (Sup Ct Special Term, Queens County 1947) 1947 NY Misc LEXIS 2396, see Attorneys' Fees Preliminary Material (3d ed by Robert L. Rossi).
A fair review of the evidence demonstrates that the defendants have satisfied the Neeman factors.
This was a complex case. The Plaintiffs sought damages in the amount of $18 million dollars, plus punitive damages and attorneys' fees, against the Defendants. Defense counsel were obliged to answer a finely crafted 279-paragraph Complaint whose claims spanned events that occurred over nearly fifteen years. To successfully respond to such claims required strenuous efforts on both a motion to dismiss and motion for reargument. The hours expended by both Herrick Feinstein and Hamburger Yaffe were more than understandable, they were necessary.
Moreover, the representation of Defendant's cause required attorneys of considerable skill and experience. Referring to the testimony, the Court finds that the experience, ability, and reputation of defense counsel were not seriously challenged by the Plaintiffs. The application of this expertise manifested itself in a marshalling of evidence and law resulted in a dismissal of the complaint.
The thrust of Plaintiff's opposition centers on two arguments: (1) that the hourly rate of the Herrick attorneys was higher than what is customary, and (2) that defendants used an inordinate number of lawyers on this case.
Defense counsels' hourly rates and hours expended on this case were as follows: Belinda Schwartz Partner $985.50 43.00 hours; William Fried Partner $877.50 17.90 hours; Michael Berengarten Partner $706.50 1.10 hours; Kaylie Scheinman Partner $607.50 27.4 hours; Scott Ross Partner $630.00 246.30 hours; Pamela Fredrick Associate $580.50 54.30 hours; James Gedeon Paralegal $450.00 3.30 hours; Ruby Grossman Paralegal $432.00 2.50 hours; and Jonathan Skidmore Paralegal $432.00 9.50 hours.
Mr. Hamburger and Mr. Yaffe charged $625.00 per hour and expended 76.09 hours on their client's behalf.
The Court will first address the claim that too many attorneys from Herrick were involved in this case. Counsel states that
. . . the Herrick team was overstaffed with eight (8) attorneys, including three (3) senior partners with no litigation experience. A review of Herrick's time sheets reveals extensive overbilling and duplication of work, including wildly excessive hours spent on drafting and reviewing the briefs . . . Plaintiffs should not be responsible for reimbursing legal fees that were admittedly inflated due to the demands of a wealthy client with bottomless pockets. (Plaintiff's affirmation in opposition Page 2).
There is nothing in the record to indicate that the defense attorneys involved were unnecessary or that supervisory review was uncalled for. The court will not criticize a command structure which, like Nelson at Trafalgar, secured a victorious result. 
We next turn to the propriety of the block billing records submitted in support of the fee. As described above, they are very detailed. Against Plaintiff's counsel's considered argument stands an array of case law which specifically hold that "block billing" records are acceptable proof in this matter. In the case of Daniele v. Puntillo, 97 AD3d 512, 513, 949 NYS2d 365, 367 (1st Dept 2012) the Court was presented with the same argument that the defendants assert herein, namely "that 'block billing' was improper and that 'task billing,' which lists the time for each separate task and is an enhanced level of billing, should have been used" (Id.at 513). This contention was rejected by the Daniele Court which noted that "block billing is common practice among law firms . . . " and that neither court rule nor the contract called for task billing to be used (Id.)
Although there is a contrary result found in RMP Capital Corp. v. Victory Jet, LLC, 139 AD3d 836, 840, 32 NYS3d 231 (2d Dept 2016), that decision is readily distinguishable. In RMPthe court discussed the inadequacies of the block billing used because the records submitted included "vague and nonspecific billing entries" (Id. at 840). The exhibits submitted by the Defendant in the case at bar have no such deficiencies.
It is also beyond cavil that in setting a reasonable fee, the Court must also limit itself to " . . . the prevailing hourly rate for similar legal work in the community . . . " Lancer Indem. Co. v. JKH Realty Grp., LLC, 127 AD3d 1035, 1036, 8 NYS3d 356 (2d Dept 2015).
Allowing for inflation, the hourly rate of the Herrick firm has been found to be reasonable in our sister County of New York. In the case of Princes Point, LLC v. AKRF Eng'g, P.C. et al., Sup. Ct., Index No. 601849/2008, Justice Ramos granted the sum of $770 per hour as appropriate compensation (NY County, January 23, 2015)
The term "customary" should be defined, argues Plaintiffs, as the fees charged by attorneys practicing in Suffolk County, relying on the holdings in (RMP Capital Corp., cited above); Matter of Gamache v. Steinhaus, 7 AD3d 525, 527 (2d Dept 2004); Rahmey v. Blum, 95 AD2d 294 (2d Dept 1983); and Southampton Day Camp Realty, LLC v. Gormon, No. 11-32983, 2012 WL 2871806 (Sup Ct Suffolk County 2012) aff'd 118 AD3d 976 [2d Dept 2014]).
The above referenced authority relied upon by plaintiff did not discuss or define the term "community" and thus are of little utility.
Plaintiffs are essentially asking the Court to equate "community" with "locality". Such a definition is too limited.
The commonly understood definitions of locality and community demonstrates that they are not interchangeable. Websters Dictionary defines "locality" as "1. the fact or condition of having a location in space or time or 2. a particular place, situation, or location".
"Community", however, is a capacious term compared with locality. It is defined in Websters as "a unified body of individuals: such as the people with common interests living in a particular area . . . [or] a group of people with a common characteristic or interest living together within a larger society [or] . . . a body of persons of common and especially professional interests scattered through a larger society"
In deciding the question of "professional interests scattered through a larger society" The Court is drawn to the Rules of the Commercial Division of the Supreme Court (22 NYCRR § 202.70). Counsel are reminded of the purpose for the Commercial Courts creation- "the cost effective, predictable and fair adjudication of complex commercial cases (emphasis ours)".
To that end, jurists assigned to that court are expected to be possessed of " . . . exceptional judicial expertise . . . " and the attorneys who appear before it are "held rigorously to a standard of commitment and professionalism of the highest caliber" (202.70 Preamble).
This Court has had the privilege of presiding over cases in which witnesses were called —virtually- from the far side of the globe and involved participation by attorneys (once again appearing via the medium of teleconferencing) from the other States. 
Since the Covid Pandemic, we have regularly held conferences with counsel and clients from hundreds of miles from the physical Courthouse using the virtual appearance software on their phones, notepads and/or computers, saving hours of attorney travel time. 
My recitation of the policy statement in the preamble to the Commercial Division Rules and the technical advances involved in the functioning of the Court are not meant to boast of the Commercial Division's importance. It is simply to recognize the state of affairs concerning this area of practice- The Commercial Courts and Bar in New York State are an integrated whole with a uniform level of expertise . Our "locality" for the purposes of a commercial case is not defined by the geographic Lines of Suffolk and Erie Counties or the five boroughs of New York City. 
This is an area of law that, by the Chief Judge's mandate, is to embrace the disputes of World Commerce and encourage their resolution in our State. For the Court to diminish an attorney's fee based simply on locality, would have the effect of preventing businesses from retaining the services of New York City firms if they wished to litigate in Suffolk County. There is no logic to support this, no more than if a Suffolk or Nassau County firm with equal talents (and there are many) to their urban counterparts be justified in demanding a higher fee [FN2]
for representation in a Manhattan Commercial Part than they charge in Suffolk, simply by virtue of a change in geography. 
The attorneys who dedicate their careers to this demanding area of practice have the right to have their "stock in trade", as the great Lincoln called it, assigned the same value wherever [*4]they may represent their clients within the state of New York. 
We have considered the remaining arguments of Plaintiffs, and although they have been put forth with commendable vigor by Mr. Camhi, they fail to persuade the Court.
Therefore, the Court awards the defendants the following sum for legal fees and disbursements:
for Herrick, Feinstein LLP $345,594.15 in legal fees and $25,399.67 in disbursements for a total award of $370,993.82; and
for legal services provided by Hamburger Yaffe the total award is $46,375.00.
Settle judgment.
Dated: August 4th, 2025
Riverhead, NY
HON. JAMES HUDSON
Acting Justice of the Supreme Court

Footnotes

Footnote 1:"Notes for a Law Lecture," The Collected Works of Abraham Lincoln (Abraham Lincoln Assoc., Roy P. Basker, ed.,1953).

Footnote 2:(This Court is, of course, not referring to extra expenses due to travel, lodging etc.)