OPINION OF THE COURT
John T. Buckley, J.
By another decision and order issued today, this court has decided visitation, support, and maintenance issues in this matrimonial action. This decision is being issued to separately address counsel fees for the Law Guardian.
The Law Guardian was appointed by temporary order of Justice Shaheen on February 16, 1996 which order specified an hourly rate of $75 to be paid from the assets of the parties and to be assessed equally against each party’s share of those assets. The Law Guardian appointment was continued by a subsequent temporary order of the undersigned which order did not address the hourly rate or the ultimate allocation of responsibility for fees but did direct each party to provide the appointed Law Guardian with retainers of $500 from each party for a total retainer of $1,000. Each party advanced $500 and Mr. Colangelo paid an additional $150.
This court held a hearing shortly after the Law Guardian was appointed. Following the filing of the trial note of issue, there were discovery motions from Mrs. Colangelo, and a trial on grounds which resulted in this court’s decision and order dismissing Mrs. Colangelo’s matrimonial cause of action on the basis that she had failed to establish any ground for divorce. Finally, there were hearings on child custody, visitation and financial matters arising from the separation of the parties in 1995.
The Law Guardian has submitted detailed time records, uncontroverted by either party, which reflect that he expended slightly more than 68 hours on these matters. The submitted documentation is sufficient. (Burke v Crosson, 191 AD2d 998 *839 [4th Dept 1993]; Matter of Slade, 99 AD2d 668 [4th Dept 1984].) The court finds that the Law Guardian provided very good representation to these children, was adequately and consistently prepared for court appearances, conferences and trials, and that his record of time expended reflects an eminently reasonable number of hours given the nature of this case and the litigation postures taken by the parties. (Matter of Potts, 213 App Div 59 [4th Dept 1925].) There have been no submissions from the parties disputing the hours, the rate or the fee sought on any factual basis. (Podhorecki v Lauer’s Furniture Stores, 201 AD2d 947 [4th Dept 1994].)
The Law Guardian provided the court with helpful and critical insights; he clearly articulated the condition and concerns of the Colangelo children. The court finds that an hourly rate of $75 per hour, as fixed by Justice Shaheen’s temporary order, is well below the hourly rate customarily billed and obtained by attorneys of like experience and skill for work of similar quality. Review of this fee application must focus on the “customary fee charged for similar services by lawyers in the community with like experience and of comparable reputation to those by whom” the party seeking a fee was represented. (Matter of Rahmey v Blum, 95 AD2d 294, 302 [2d Dept 1983], quoted and relied upon in Wells v Crosson, 210 AD2d 932 [4th Dept 1994].) Attorneys with the experience and skill of this Law Guardian in this area are paid at hourly rates of $125 to $150 per hour. Attorneys in this community often do not make distinctions between in-court and out-of-court time but rather bill a unitary rate which reflects overhead as well as a variety of other factors. The customary fee in this community has not increased noticeably over the past decade; unlike fee structures in other regions of this State, the local customary fee has remained constant while costs have risen. Attorneys in the relevant market do bill reduced rates for work performed by paralegals or for work done in bulk and for a long-term client. This Law Guardian did not use a paralegal, this work was not done as part of a larger contract for legal services, and there is no long-term client relationship. In this case, the Law Guardian’s time records do not document time which can be characterized as “clerical” or otherwise requiring a lower hourly rate. (Burke v Crosson, 191 AD2d 998 [4th Dept 1993], supra; Becker v Empire of Am. Fed. Sav. Bank, 177 AD2d 958 [4th Dept 1991]; Matter of Rahmey v Blum, 95 AD2d 294, 303-305 [2d Dept 1983].) There is no time which needs to be eliminated because it is duplicative, excessive or otherwise unreasonably *840 billed. Although this type of legal work is done by appointment and does not reflect the choice of the client, the court does not believe that children requiring an attorney should be relegated to counsel any less skilled or any less compensated than counsel retained by adult litigants. In any event, the court finds that an hourly rate of $75 per hour is a minimum reasonable hourly rate at which the court can be assured of obtaining competent counsel suitable for representing the interests of minor and dependent children. To further reduce the sought fee by distinguishing between in-court and out-of-court legal services or upon any other basis would be to render a fee award which would undercompensate the Law Guardian for his time actually and reasonably expended. As such, the court finds that the hourly rate set by Justice Shaheen is reasonable and that a unitary rate is proper and necessary to compensate him for time actually expended. The Law Guardian has not submitted any proof that a higher hourly rate would be warranted based upon the actual hourly rate within the relevant community for this quality and quantity of legal work. Based upon a reasonable expenditure of time of 68.2 hours and a reasonable hourly rate of $75 per hour, the court finds that the Law Guardian is owed an attorney’s fee in the amount of $5,115 for work performed to date.
Determination of a “reasonable” attorney’s fee implicates many factors. A reasonable fee usually equals the fair and reasonable value of services rendered. (Matter of Potts, 213 App Div 59 [4th Dept 1925], supra.) In the absence of an express contract, judicial fee determination requires multiplication of hours productively expended by a reasonable hourly rate. (Podhorecki v Lauer’s Furniture Stores, 201 AD2d 947 [4th Dept 1994], supra; Matter of Rahmey v Blum, 95 AD2d 294, 303 [2d Dept 1983], supra.) An individual may be obligated by implied contract to compensate counsel for legal services in which situation the court must determine the value of the legal services rendered. (Hughes v Hughes, 224 AD2d 389 [2d Dept 1996].)
Mrs. Colangelo has raised an important issue regarding the hourly rate of the Law Guardian. She argues that orders directing parties to be responsible for counsel fees for their children when custody is at issue “were done away with and Law Guardians are required to be paid by the County in which the children reside.” Such an assertion would, if accepted, mark a significant expansion of the availability of publicly funded counsel, and a corresponding and noteworthy constriction of the type of legal work capable of being done by private counsel.
*841 Although not providing any legal authority to the court for this proposition, such as a statutory amendment or a rule change or a judicial opinion, Mrs. Colangelo did provide an excerpt from an article entitled Authority of Court to Order Party to Pay Fees of Law Guardian authored by Russell I. Marnell and first published in the New York Law Journal (at 1, col 1) on August 15, 1996. The court obtained a photocopy of the full article as published by the Law Guardian Reporter in volume XII, issue IV.
According to Mr. Marnell, custody litigants have been increasingly required by courts in this State to assume the cost of counsel fees for their children although there is no “inherent statutory authority” authorizing such fee awards. After canvassing the Judiciary Law, Family Court Act, and the Domestic Relations Law he argues that there is no express statutory authority for such fee shifting, that separations of powers principles preclude judicial “rulemaking” where the Legislature has been silent, and that the only source of money for Law Guardians for children is the publicly funded 18-B panel. (County Law art 18-B.) Alternative consequences of this argument are that either all Law Guardians are paid from public funds or that only indigent children are able to have counsel who are compensated if appointment is means tested. It is the former argument which Mrs. Colangelo has raised in opposition to the Law Guardian’s fee application. Finally, Mr. Marnell opines that courts which impose attorney fee costs upon divorcing parents are routinely exceeding their jurisdiction to accomplish what he describes as a fair, just and equitable result, namely the provision of counsel for all children. Mr. Mamell’s analysis is fatally flawed.
A review of the relevant statutory provisions provides the necessary backdrop against which to properly view and comprehend the court’s ability to impose fees.
Judiciary Law § 474 provides, in pertinent part, that: “The compensation of an attorney or counsellor for his services is governed by agreement, express or implied, which is not restrained by law”.
County Law § 722 provides, in pertinent part, that: “The governing body of each county * * * shall place in operation throughout the county a plan for providing counsel to persons * * * who are entitled to counsel pursuant to section two hundred sixty-two * * * of the family court act * * * who are financially unable to obtain counsel.” (Emphasis added.)
Family Court Act § 249 provides, in pertinent part, that: “(a) In a proceeding under article seven, three or ten or * * * under *842 section three hundred eighty-four-b of the social services law * * * or when a minor is sought to be placed in protective custody under section one hundred fifty-eight, the family court shall appoint a law guardian to represent a minor who is the subject of the proceeding or who is sought to be placed in protective custody, if independent legal representation is not available to such minor” (Emphasis added.)
Family Court Act § 245 provides, in pertinent part, that: “(c) If an appellate division proceeds pursuant to subdivision (c) of such section two hundred forty-three, law guardians shall be compensated and allowed expenses and disbursements in the same amounts established by subdivision three of section thirty-five of the judiciary law.”
Judiciary Law § 35 (3) provides, in pertinent part, that: “No counsel assigned pursuant to this section shall seek or accept any fee for representing the person for whom he is assigned without approval of the court as herein provided. Whenever it appears that such person is financially able to obtain counsel or make partial payment for the representation, counsel may report this fact to the court and the court may terminate the assignment or authorize payment, as the interests of justice may dictate, to such counsel. Counsel assigned hereunder shall at the conclusion of the representation receive compensation at a rate not exceeding forty dollars per hour for time expended in court, and twenty-five dollars per hour for time reasonably expended out of court, and shall receive reimbursement for expenses reasonably incurred * * * In extraordinary circumstances the court may provide for compensation in excess of the foregoing limits.” (Emphasis added.)
The assigned counsel Law Guardian panel is only intended to provide public funding for children of those parents unable to afford privately retained counsel. Where, as in this case, it appears that one or both parents have been or are financially able to retain counsel for a child, independent legal counsel is “available” and a panel appointment is not warranted. To provide publicly funded legal representation to individuals with an ability to afford their own counsel makes no sense. Assigned counsel is means tested and by the same token the availability of assigned counsel has never been held a bar to retention of private counsel if finances permit. The assigned counsel system requires that appointment for publicly funded Law Guardians be made in a manner consistent with Family Court Act § 249 but then only if the individual is unable to afford counsel or, in the felicitous language of the stat *843 ute, if “independent legal representation is not available” to such minor. Availability depends upon financial ability.
The creation and implementation of a Law Guardian panel did not preclude representation of minors by private counsel and relegate all children to publicly funded attorneys. If, as Mr. Marnell repeatedly states, assigned counsel which is publicly paid is the only vehicle for obtaining attorneys for children, children of nonindigent parents must remain unrepresented since the statutes make it clear that representation is only available pursuant to the statute to those unable to afford counsel. There is, however, no section of the Judiciary Law or County Law which makes the representation of children in these proceedings the de jure monopoly of the assigned counsel Law Guardian panel or that prohibits children for whom counsel can be privately paid from being represented by an attorney not on the panel. Mr. Marnell’s argument has confused availability with exclusivity. To hold otherwise would deny the equal protection of the law as to the children of nonindigent litigants and raise troubling questions about the creation of an anomalous monopoly for publicly funded counsel. Such concerns are quite separate and apart from the fiscal consequences of holding that all counsel providing legal services to children must be supported from public revenues.
Although Mr. Marnell’s article purports to be a comprehensive review of the potential sources of judicial authority, no consideration is given to one of the most basic sources empowering a court to order support for minor and dependent' children, the doctrine of necessaries. It is claimed that statutory authority is the sine qua non for a court’s power to appoint counsel. The doctrine of necessaries, neither created nor explicitly regulated by statute, has long been held to provide a sufficient basis to appoint counsel in matrimoniáis. (Elder v Rosenwasser, 238 NY 427 [1924].) That doctrine, whereby the expense of necessaries can be charged to a legally responsible relative, retains vitality in modern law and has not been displaced, supplanted or vitiated by statutes which authorize the awarding of attorney fees in matrimonial actions. A spouse’s attempt to obtain counsel fees under the statute and in reliance upon the doctrine of necessaries raises election of remedies issues not germane to this case. (See, e.g., Dravecka v Richard, 267 NY 180, 182 [1935]; Turner v Woolworth, 221 NY 425, 428-429 [1917].) A spouse and a child remain able to rely upon the doctrine of necessaries for legal fees as well as other items of support or maintenance. A minor and dependent child *844 is not subject to the decision of a parent to voluntarily pay for counsel since the doctrine of necessaries contemplates that the services will be obtained when required and, if need be, subsequently paid pursuant to a judicial determination: “The manner in which the wife is to be supported by the husband in a discharge of the obligation imposed upon him is not dependent upon any whim or caprice on his part, neither is he permitted to arbitrarily determine the measure of support which he shall provide for his wife.” (Tirrell v Tirrell, 232 NY 224, 229 [1921].) The existence of the obligation is founded upon the common law and its enforcement is properly the concern and duty of the courts. There is no question but that the Colangelo children needed the counsel that the court appointed and that such legal services as were provided by the Law Guardian constituted necessaries. That this judicially enforceable doctrine is not based upon statute but upon the common law would only be found objectionable by one unfamiliar with the lingering legacy of the common law. (See, e.g., Kass v Kass, 91 NY2d 554 [1998] [application of common law to in vitro fertilization dispute]; Matisoff v Dobi, 90 NY2d 127, 134 [1997] [statutory and common law applied to postnuptial agreement]; Matter of Fosmire v Nicoleau, 75 NY2d 218, 224 [1990] [statutory and common law applied to blood transfusions]; Price v Price, 69 NY2d 8, 14 [1986] [replacement of common law by equitable distribution statutes]; V.R.W., Inc. v Klein, 68 NY2d 560, 563 [1986] [tenancy by the entirety and common law].) As a direct descendant of the Court of Kang’s Bench, the Court of Chancery and the Supreme Court of the Colony of New York, this court’s jurisdiction has a breadth and depth easily encompassing the protection of minor and dependent children through the furnishing of necessary legal services paid by a legally responsible and financially capable parent. (See, Matter of Steinway, 159 NY 250, 255-258 [1899] [tracing the jurisdictional history of Supreme Court].)
Although the court is satisfied that the common-law doctrine of necessaries is sufficient authority to support the parent-paid court appointment of a Law Guardian for a minor, the court alternatively finds that statutory authority exists pursuant to Judiciary Law § 474 and that the contract between the minor children and the Law Guardian is implied as a matter of law subject to the appointment and supervision of the court. This is not “inherent” statutory authority but an express grant of authority. An implied contract resulting from a statutory codification of parental liability for necessaries is, like common- *845 law liability, not unusual nor unexpected. (Baker v Sterling, 39 NY2d 397, 410-411 [1976]; Haimes v Schonwit, 295 NY 577 [1945].)
Although ordered to pay a retainer of $500 each, the billing records submitted by Mr. Antonowicz reflect payments totaling $1,150 of which $500 was made on March 29, 1996, further payments of $500 were made by June 3, 1996, and an additional $150 was made by Mr. Colangelo in two payments made on March 26, 1997 and April 11,1997. As a result of payments made, the Law Guardian is currently owed $3,965. Justice Shaheen’s temporary order specified that the parties would share in the cost of the Law Guardian equally based upon their respective share of assets. After extensive hearings on the financial resources and prospects of the parties, the court finds that Mr. Colangelo has insufficient assets or income from which to afford counsel beyond amounts he has already paid. Mrs. Colangelo has the ability to pay the Law Guardian fee owed; she also has the prospect of earning significantly greater income within the foreseeable future. The court will, accordingly, enter an order finding Mrs. Colangelo responsible for the legal services rendered to her children and remaining unpaid in the amount of $3,965 with interest from the date of this decision and order as necessities. The earlier order of Justice Shaheen which allocated attorney fee shares was on an application for temporary relief and made without a hearing or any fact-findings. This is also not a case where the parties stipulated to assume certain shares of such a cost. (Cilento v Cilento, 225 AD2d 648 [2d Dept 1996].) The court also finds that the legal services bill owing to the Law Guardian constitutes “child support” within the meaning of any enforcement statutes.
Having reviewed the submissions of the parties and the Law Guardian and having reviewed the record and having had due deliberation, it is hereby ordered that the Law Guardian is entitled to a reasonable attorney fee based upon the doctrine of necessaries and that such fee amounts to $5,115 based upon the expended time and a reasonable hourly rate and that the outstanding balance is currently $3,965, and it is further ordered that Constance Colangelo is responsible for the outstanding balance of $3,965 to the Law Guardian and that such obligation constitutes “child support” within the meaning of any enforcement or collection statute.